(70 App. Div. 336.)

### RICE v. EUREKA PAPER CO.

(Supreme Court, Appellate Division, Fourth Department.   March 11, 1902.)

MASTER AND SERVANT—INJURIES TO SERVANT — DANGEROUS MACHINERY—MASTER'S PROMISE TO REPAIR—ASSUMPTION OF RISK.
 Plaintiff, a servant of defendant, was injured while operating a defective rag-cutter.   He knew of the defect, and appreciated the danger incident thereto.   Before the injury he called defendant's attention to the defect in the machine, and declared his purpose to quit work because of it.   Defendant, for the purpose of inducing him to remain in the employment, promised to remedy the defect within a specified time.

75 N.Y.S.—4

He was injured before the expiration of the time within which defend-
ant promised to repair. *Held*, that he assumed the risks incident to the
employment.

Spring and Davy, JJ., dissenting.

Appeal from trial term, Oswego county.

Action by Herbert J. Rice against the Eureka Paper Company.
From a judgment for plaintiff, and from an order denying a mo-
tion for a new trial, defendant appeals. Reversed.

The action was commenced on the 11th day of October, 1900,
to recover damages for injuries sustained by the plaintiff on the
morning of the 4th day of April, 1900, while in the employ of the
defendant, alleged to have been caused solely through its negligence.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK,
and DAVY, JJ.

James Devine, for appellant.
Frank C. Sargent, for respondent.

McLENNAN, J. On the morning in question, and for several
years prior, the defendant was engaged in manufacturing paper from
rags, manilla rope, string, etc., at its factory located at Oswego
Falls, N. Y. One of the machines used by the defendant was a
"rag-cutter," so called, which cut the material into small pieces
preparatory to converting it into pulp. It consisted of a feed table
about three feet long, upon which the rough material was placed,
and at one end there was a large, slowly revolving cylinder, having
upon its surface spikes or teeth, which caught the material, drew
it between the cylinder and a stationary plate below, subjecting it ·
to pressure, and bringing it in contact with rapidly revolving knives
immediately behind the cylinder, where it was cut and dropped upon
a carrier, which conveyed it to another part of the machine. The
machine was located in the second story of the factory, and was
driven by power taken from a main revolving shaft extending
through the first story close to the ceiling, by means of a belt which
passed over a pulley on the shaft, and up through the floor to a
pulley on the axle of the cutter. A tight and loose pulley, cov-
ered by a box, were close together upon the end of the axle, so
arranged that when the belt was upon the tight pulley the machine
would run, and when shifted to the loose pulley it would stop. The
operator could only move the belt from the tight to the loose pulley,
and thus stop the machine, by leaving his place in front of the feed
table, going to the end of the axle, removing or opening the box,
and pushing the belt with a stick. This was the means usually em-
ployed when it was desired to stop the machine temporarily, al-
though the belt and loose pulley would still continue to revolve.
When it was desired to stop the machine for a day or for any con-
siderable time, a workman would go to the floor below, and with a
long stick push the belt from a tight to a loose pulley on the main
shaft, and thus not only stop the machine, but the belt and the
loose pulley upon the axle as well. There was no other way pro-
vided by which the cutter could be stopped, so long as the main

shaft in the factory continued to revolve, no matter what the exigencies or necessity for stopping the same. As a rule, rag-cutters and machines of similar construction are stopped by pushing the belt from the tight to the loose pulley by means of a belt shifter,—a very simple device in common use,—and the evidence quite conclusively shows that with such an appliance the machine in question could be stopped almost instantly by the operator, without leaving his place, simply by moving a lever close to his hand. When the cutter was constructed it is apparent that it was intended it should be stopped in that manner, because it was provided with a loose pulley, the only purpose of which is to facilitate the stopping of the machine, and ordinarily a belt is not moved onto such a pulley except by means of a shifter; at least, the machine could be stopped safely and almost instantly by that method. It further appears that by another simple device, also in common use, called a "belt tightener," the machine could be stopped with almost equal facility, and for nearly a year prior to the day in question the defendant had in its factory, substantially ready for use, a tightener for this machine, but for some reason it had never been attached. With that attachment the operator would only have to pull a cord, close to his hand, and a weight would be removed from the belt, and thus loosen it upon the pulley, when it would immediately cease to revolve. By means of either device, in case of necessity, the machine could be stopped almost instantly, and substantially as effectively with one as with the other. Without either of such devices, and with the machine in the condition it was, it would be impossible for the operator to stop it, if for any reason he became unable to leave the place where he was required to stand in order to perform his work, and the danger and risk incident to the operation of the machine were thereby greatly increased. Under such conditions it is obvious that, if the person or clothing of the operator should become caught in the machine, serious injury would result, which he would be utterly powerless to prevent.

About 2 o'clock in the morning on the 4th day of April, 1900, the plaintiff, who had been in the defendant's employ for more than a year previous, tending the machine in question, was standing in his accustomed place in front of the feed table, placing thereon rags, rope, string, etc., to be drawn under the cylinder, and to the revolving knives beyond. While so engaged, his right hand was caught in a loop of a strong string, and was being slowly drawn to the cylinder. He attempted to extricate this hand with the other, but in so doing it also became caught, and both were drawn to the cylinder, and to the revolving knives, where, little by little, the entire right hand and all the fingers on the left but one were cut off. A fellow workman then came to the plaintiff's assistance, shifted the belt from the tight to the loose pulley on the axle, the machine stopped, and the plaintiff was extricated. This action is brought to recover damages for the injuries thus sustained.

The plaintiff at the time of the accident was 40 years of age; was ordinarily bright and intelligent; had tended the machine in question for more than a year; was entirely familiar with its con-

struction and operation; knew that it was not provided with a belt shifter or belt tightener; fully understood that proper provision had not been made for stopping the machine; and knew and apprehended the dangers incident thereto. The machine was suitable for the work it was intended to do; all the parts were perfect, and all appliances necessary or convenient for its use were supplied, except a belt shifter or belt tightener, which would have enabled the plaintiff to stop the machine at will and almost instantly; but that such appliances had not been furnished and were not in use was apparent, and was known to the plaintiff. He also knew the danger to be apprehended from a failure to use such devices. If no other facts existed, clearly the plaintiff assumed the risk of his employment, and would not be entitled to recover.

The correct rule applicable to such a state of facts is stated in Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286, in the following language:

"There is no doubt that an employé in accepting service with a knowledge of the character and position of the machinery, the dangers of which are apparent, and from which he might be liable to receive injury, assumes the risks incident to the employment, and he cannot call upon the defendant to make alterations to secure greater safety."

The rule was, in effect, reiterated in Crown v. Orr, 140 N. Y. 452, 35 N. E. 648. The court said:

"If he [the employé] voluntarily enters into or continues in the service without objection or complaint, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risk, and to waive any claim for damages against the master in case of personal injury to him."

The proposition of law was, in effect, stated by the learned trial justice in his charge to the jury, when he said:

"Where a servant in the employ of a master knows the danger, understands the machine perfectly, realizes the risk which he undertakes, the law regards him as having assumed all the risk or danger."

The counsel for the respondent does not seek in any manner to controvert the rule of law stated, or to question its applicability to the facts of the case at bar, so far as they have now been recited, but it is insisted that the additional facts to which attention will now be called take the case out of the rule adverted to. The accident happened on Wednesday morning. The plaintiff testified, in substance,—and the evidence is sufficient to support a finding to that effect,—that on Saturday previous, while feeding the machine, his fingers became caught in the string in such manner that they narrowly escaped being drawn under the cylinder; that he at once called the attention of his superior, a Mr. Webb, to the fact, who, upon the evidence, the jury was justified in finding represented the defendant, and stated to him that he would stop work upon the machine that Saturday night, when his contract of hiring expired, unless a shifter was connected with it so that it could be stopped; that Mr. Webb assured him the defendant would put a shifter upon the cutter the first part of the following week; that he, relying upon such promise and assurance, remained in defendant's employment, believing it would be done; and that he would not have con-

tinued to work upon the machine if such promise had not been made. The jury was also justified in finding, upon the evidence, that the plaintiff's injuries resulted because of defendant's failure to furnish and attach to the rag-cutter a belt shifter or tightener, or make proper provision for stopping the machine; that it was negligent in that regard; that such negligence caused the accident; and that the plaintiff was not guilty of negligence because of anything done by him in feeding the machine at the time of the accident.

It is urged by respondent's counsel that the promise and assurance made and given on behalf of the defendant that it would supply a proper appliance for stopping the machine, which was relied upon by the plaintiff, furnishes an exception to the rule applicable to the assumption of risk by an employé, and so the plaintiff is entitled to recover damages for the injuries sustained by him. It is not contended that the judgment can be sustained upon any other ground, and that presents the only question which requires consideration.

The doctrine of assumption of risk is based upon contract. Independent of any question of public policy or statutory prohibition, a master has a right to hire a servant to operate machinery which, as originally constructed, is defective and unsafe, or which has become so because permitted to get out of repair, no matter how great the danger incident to its operation, provided the servant knows its condition and fully appreciates the risk. In case a contract of hiring is entered into under such circumstances, the presumption is conclusive that the parties contracted with reference to existing conditions; that the wages of the servant were fixed accordingly, presumably increased because of the assumption by him of the risk incident to operating defective and dangerous machinery, and in case he thereby sustains injury the master is not liable. The servant's right in the premises is to refuse to contract, or, if he has entered upon the employment and does not longer wish to expose himself to its dangers, to stop work. The rights of the parties to such a contract, although simply a verbal agreement to employ by the master and to work by the servant, is no different than if it had been in writing, and had expressly provided that for a certain sum per day or per week, to be paid by the master, the servant would operate a defective and dangerous machine, which was fully described, and would assume the risk incident thereto. If to such a contract is added a clause by which the master, for the purpose of inducing the servant to accept or remain in the employment, agrees to remedy the defective machinery, and thereby make its operation reasonably safe, are the rights of the servant changed or enlarged, in case he is injured, simply because the master failed to remedy or repair the defects as he agreed to do? We can conceive of no principle of law upon which to rest the proposition that by such a contract of hiring the servant becomes relieved of the assumption of the risk incident to the operation of such machinery, simply because the master promised to remedy or repair the same.

If a manufacturer hires a machinist for two days to run an engine which is dangerous because the fly wheel is broken, which defect is known to, and the danger is fully appreciated by, the machinist, in

case he sustains injury because of such defect the master is not liable, because the servant himself assumed the risk incident to the operation of the engine in that condition. If when the master employed the servant, and even for the purpose of inducing him to enter the service, he promised to supply the engine with a new fly wheel upon the morning of the second day, and during the first day the servant was injured, how can it be said that he did not assume the risk incident to the first day's service? By the contract the servant, in effect, agreed to run, for one day at least, the defective engine. Presumably his wages were increased because of the dangers attending such work. Knowing all the facts, he contracted to operate an engine for at least one day with a broken fly wheel, which made its operation hazardous. But suppose accident does not result during the first day's service, and upon the morning of the second day the servant discovers that the master has failed to keep his promise to supply the engine with a perfect wheel, but the servant, without protest, remains in the employment and continues to operate the engine, and on the second day the fly wheel goes to pieces and he is injured; do not all the elements exist which impose upon the servant the assumption of the risk? He knew the defect; appreciated the danger, which was apparent; yet, with full knowledge of the conditions, continued in the employment. In the case supposed there could be no suggestion that the servant believed the defect had been remedied, and for that reason continued in the service. He knew that the fly wheel upon the engine continued to be in a defective and dangerous condition; knew that the promise of the master had not been fulfilled; and yet with such knowledge he assumed to commence operating the engine on the morning of the second day. We fail to see how the promise of the master to repair, and his failure to do so, even under such circumstances, in any manner changed the relations or rights of the parties. When the servant discovered that the wheel had not been repaired on the morning of the second day, he was under no obligation to continue his work because the master had broken the contract. He was then entitled to stop work, and to recover any damages resulting from the breach. It is suggested that he had a right, under the contract, to continue to operate the dangerous machine, knowing it had not been repaired by the master as he had promised, and then insist upon recovering from the master the damages for personal injuries sustained by him on account of the failure to repair; but that is only another way of saying that the risk of operating the machine ceased to be assumed by the servant from the moment the master promised to repair.

An experienced locomotive engineer is upon an engine ready to start upon his trip. He has the lever in his hand with which to start or stop the engine. The lever is cracked, and is liable to break at any time. The engineer knows it, and knows and fully appreciates the danger attending its use in that condition. He calls the attention of the master to the unsafe condition of the lever, and declares he will quit the service unless it is remedied. The master then and there promises to have it repaired before the engine is started upon another trip. That promise being made, the engineer, without protest, fully

knowing and realizing the danger, starts upon his journey, and is injured through the breaking of the lever. On what principle is the master liable? He has procured a defective engine to be run, as he had a right to do, provided only the servant knew of the defects and also knew the danger. He has not broken any agreement. He did not agree to repair until the return of the engine from the trip then commenced. Upon principle, we fail to see why the case does not fall within the rule laid down in many cases decided by the court of appeals, and which is stated in Hickey v. Taaffe and Crown v. Orr, supra.

In the case at bar it is not claimed that the defendant would have been liable for plaintiff's injuries if received while operating the rag-cutter previous to the Saturday night preceding the accident; but upon that night, the contract period then ending, he being only hired from week to week, the plaintiff declared his intention of leaving defendant's employ unless the machine was supplied with a belt shifter, which would render its operation less hazardous. Thereupon the defendant assured the plaintiff that, if he would continue to operate the machine in the condition in which it then was, it would be supplied with a shifter during the fore part of the following week. The plaintiff assented, and continued to operate the machine precisely as before. It would seem that the only effect of the new arrangement was that the plaintiff expressly stipulated to operate the dangerous machine for at least two or three days, precisely as he had impliedly stipulated to do and had done for a year previous, but with the assurance that at the end of the two or three days it would be made reasonably safe. How he ceased to assume the risk of such employment during those days which for a year he had assumed, solely because of defendant's promise, it is difficult to understand. The dangers incident to operating the cutter were in no manner increased. The conditions were unchanged. Plaintiff's knowledge of the situation and appreciation of the risk were the same. The defendant had not broken his agreement, and, so far as appears, had no intention of so doing. The time in which it promised to remedy the defect had not expired. How, then, did the plaintiff acquire important rights in addition to those which he had prior to the Saturday night in question, to wit, rights which relieved him from the assumption of the risk of the employment, and placed that burden upon the defendant? On Saturday night, the plaintiff having declared his intention of leaving defendant's employ because no belt shifter was attached to the machine, the defendant said to the plaintiff, in substance: "I want my dangerous rag-cutting machine run for a few days longer, and until I have an opportunity to repair it, which will be in two or three days at most. You know all about it, and I would like to have you do it, but if you do not wish to I will get some one else." The answer of the plaintiff was, in effect, that he would continue the employment upon the conditions specified. He did so; continued to operate the machine, with full knowledge of all its defects, and fully appreciating the dangers incident thereto. It cannot be said that the time in which the defendant promised to remedy the defect had expired, the accident having occurred in the early morning of the

Wednesday following the Saturday night when the promise was made. There is no pretense that the plaintiff supposed the repairs had been made, and thus was induced to remain, or had been assured the cutter could run safely, or comparatively so, and relied upon the superior knowledge of the defendant's superintendent in that regard. But even if, upon the evidence, it might be found that "the fore part of the following week" had expired, and thus that the defendant had violated his agreement to repair, we cannot perceive how that fact would change or enlarge the plaintiff's rights in the premises, because he knew perfectly well the defect had not been remedied, and continued, without protest or complaint, to operate the cutter. So that we have the precise question presented: Does the bare promise of a master to repair, in the future, defective machinery, which is being operated by a servant who has knowledge of the defects and fully appreciates the danger incident thereto, relieve the servant from the assumption of the risks of the employment, and, in effect, make the master an insurer of the servant's safety?

So far as we have been able to discover, the question has not been directly passed upon by the court of appeals of this state, in any case where the views of the court have been expressed in an opinion, and where the determination of the question was necessary to the decision of the case. As there seems to be some conflict between the decisions of the lower courts and the decisions of the courts of sister states, we have deemed it proper to point out why, in our opinion, the rule which was made the basis of the judgment appealed from is unsound in principle, and why it should not be incorporated into the law of this state applicable to actions for negligence brought by employés against employers. Having done so we will review the adjudicated cases bearing upon the question, and endeavor to ascertain whether or not such a rule has been approved by the weight of authority. The question is an important one. If the respondent's contention shall prevail it will only be necessary in the future, in any action brought by a servant against the master to recover damages for injuries sustained on account of defective machinery, tools, or appliances, or because an unsafe place in which to work is provided, to testify that the master promised to remedy or repair, and his liability will be established, or at least an issue will be raised for the determination of a jury.

Laning v. Railroad Co., 49 N. Y. 521, 10 Am. Rep. 417, was an action to recover for injuries sustained by the plaintiff, who was in defendant's employ, in falling from a scaffold erected under the supervision of another employé, which collapsed because improperly constructed. It appeared that the employé who had charge of erecting the scaffold was, to the knowledge of the defendant, addicted to the use of liquor to such an extent that he was frequently drunk while engaged in the performance of his duties and at the time when the scaffold was erected, and that the defective construction of the scaffold was the result of such intoxication. It also appeared that the plaintiff knew of the habits of such employé, that the scaffold was erected under his direction, and of the condition he was in at the time. It further appeared that the defendant,

through its foreman, prior to the accident, had assured the plaintiff that if the employé, who had charge of erecting the scaffold, did not do better or mend his habits, he would have him discharged. It did not appear that the plaintiff knew the scaffold was dangerous. It was urged that the defendant was not liable because the scaffold fell on account of the negligence of a co-employé, occasioned by his intemperate habits, of which the plaintiff had knowledge. Upon all the facts, including the promise of defendant's foreman, it was held that under the circumstances of that case the question of plaintiff's contributory negligence was one of fact for the jury, and, the jury having found a verdict in favor of the plaintiff, the judgment entered thereon was sustained. The decision cannot be regarded as authority for the proposition contended for in the case at bar. It would be somewhat analogous if it had been shown that the plaintiff in that case knew the scaffold was defective; had gone upon it fully appreciating the danger; had thus sustained injury, and had then sought to recover damages, claiming that he was relieved from the risk of going upon the scaffold which he knew was dangerous, simply because the defendant had assured him that the person under whose direction it was erected would not become drunk while engaged in the duties of his employment. No such proposition was held. It was only decided that it was proper for the jury to take into consideration all the circumstances adverted to, in determining whether or not the plaintiff was free from, or chargeable with, contributory negligence. It is true the learned judge who wrote the opinion quotes substantially from the opinion in the case of Holmes v. Clark, 10 Wkly. Rep. 405, and says:

"It has been held that there is a formal distinction between the case of a servant who knowingly enters into a contract to work on defective machinery and that of one who, on a temporary defect arising, is induced by the master, after the defect has been brought to the knowledge of the latter, to continue to perform his service under promise that the defect shall be remedied."

But this language was apparently only used for the purpose of showing that it was proper, after it had been proven that the plaintiff in that case knew of the intemperate habits of the other employé, to show that the foreman of the defendant had promised to see that such employé did better, or in case he did not to have him discharged, and that those facts, with the others, were properly for the consideration of the jury. The proposition stated in the second headnote to the case quoted in the brief of respondent's counsel is not, so far as we can ascertain, borne out by the facts, by the decision, or by any language contained in the opinion of the learned judge.

In the case of Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722, it was held that a threat by the master to discharge a servant if he does not continue to use a machine which he was engaged to operate, and which is in the same condition it was when he undertook the work, is not coercion which will render the master liable in case the servant is injured by its use. In that case, which was an action by an employé who was injured in operating a defective machine, the plaintiff testified that he told the

superintendent it was dangerous; that he was referred to the machinist, who promised to remedy the defect. Judge Danforth, in writing the opinion of the court (page 525, 101 N. Y., and page 360, 5 N. E., 54 Am. Rep. 722), said:

"If the defect had been in the pedal, and a promise made to repair that, and yet directions given for its use, it might be otherwise; but here the promise, if there was any, concerned a new appliance, not attached to that particular machine, nor to any machines of that make. The Adams machines, as the plaintiff's witnesses proved, were uniformly furnished with the pedal. A clutch had never been seen on one. They were for different purposes."

While a portion of the language quoted would seem to indicate that if the promise in that case had been to add something which properly belonged to the machine, the lack of which caused the injury, the plaintiff might have recovered because of such promise, that question was not decided, and was not necessary to the decision of the case. Expressions of similar import may be found in the opinions in other cases decided by the court of appeals.

Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56, was an action brought to recover damages for injuries sustained by the plaintiff in falling from a ladder used by him in lighting lamps in front of defendant's building. The ladder slipped, and the plaintiff was injured because it was not "hooked and spiked." The plaintiff knew its condition; that in consequence it was likely to fall; and made complaint to the defendant, and was by him directed to go to the superintendent, who promised the plaintiff that he would have the ladder "hooked and spiked." The superintendent failed to do so. The plaintiff continued to use the ladder as before, and was injured. It was held the plaintiff could not recover. In that case the court apparently regarded the fact important that the plaintiff was a common laborer, employed in doing common work, and was using a common tool or appliance, in regard to the use of which he had perfect knowledge. The court said:

"The fact that he [the plaintiff] notified the master of the defect, and asked for another instrument, and the master promised to furnish the same, in such a case does not render the master responsible if an accident occurs."

We think the language quoted could not have been intended to be only applicable to common laborers using simple tools and appliances, and not to skilled laborers using complicated machinery, provided the latter, because of their skill, were perfectly familiar with such machinery, and with the dangers incident to its operation.

As was said by Mr. Justice Cullen in Spencer v. Worthington, 44 App. Div. 496, 60 N. Y. Supp. 873:

"There is a great difference between the use of a steam boiler and that of a stepladder. A servant exercising due care would probably always know when a stepladder was likely to break down, while he might not know when a boiler was likely to blow up. Therefore there is a marked distinction between a boiler and a stepladder, so far as knowledge of danger and consequent assumption of risk should be imputed to the servant. But when, because the servant is an expert or for other reasons, his knowledge of the danger arising from the use of the boiler is just as great as that which an ordinary servant would possess in the use of a stepladder, we do not see on what ground any distinction can be drawn between the two cases."

In the case at bar the evidence clearly shows that the plaintiff was quite as familiar with the machine in question, and with the consequences and dangers attending its operation without a belt shifter, as was the plaintiff in the Marsh Case with the ladder and its operation, and with the danger of using it without hooks and spikes.

The case of Healy v. Ryan, 25 Wkly. Dig. 23, affirmed in 116 N. Y. 657, 22 N. E. 1130, without an opinion, cited by respondent's counsel, is by no means decisive of the question involved. Certain of the language in the opinion of the court at general term is susceptible of the construction contended for by counsel, but an examination of the printed case on appeal discloses that there was abundant ground upon which to sustain the judgment, independent of whether or not the defendant in that case promised to repair the defective brake. Apparently proof of the promise was not made for the purpose of establishing nonassumption of risk on the part of the plaintiff, but for the purpose of proving knowledge on the part of the defendant that the brake was defective, which was the chief issue litigated. The plaintiff gave evidence tending to show that while he knew the brake was somewhat defective, and had complained of it, he believed it would answer the purpose for which it was intended; that at the time of the accident he was in good faith trying to operate it, but that owing to its worn condition it would not take hold of the wheel with sufficient firmness to hold the heavy train on the descending grade, where it was necessary to stop in order to avoid the collision. Upon all the facts in that case, including the promise of the defendant to repair the brake, the question of defendant's negligence and of plaintiff's freedom from contributory negligence was submitted to the jury, and, those questions having been determined by its verdict in favor of the plaintiff, the judgment entered thereon was affirmed by the general term, Fourth department, and by the court of appeals.

A large number of cases might be cited which amply support the proposition that where a servant has been assured by the master that the machinery or appliance with which he is working, or the place in which he is performing his duties, is safe, or that no injury will result from the defects, if any, he has a right to rely upon the superior knowledge of the master, and continue the employment, and if injured in consequence of such defects he may recover the damages sustained, notwithstanding he knew of the defects. Belonging to that class of cases are Hawley v. Railway Co., 82 N. Y. 370; Daley v. Schaaf, 28 Hun, 314; Siedentop v. Buse, 21 App. Div. 592, 47 N. Y. Supp. 809. Those and similar authorities have no application to the case at bar, for no assurances were given by the defendant that the machine was safe or that its operation was not dangerous. The plaintiff did not rely upon the superior knowledge of defendant's foreman. The jury was expressly charged that the plaintiff had full and complete knowledge as to the condition of the cutter, and as to the danger attending its operation in the condition in which it was at the time of the accident.

In the case of Hannigan v. Smith, 28 App. Div. 176, 50 N. Y. Supp. 845, the precise question under discussion was raised and de-

cided. In that case the plaintiff was engaged in carrying brick from the street to an elevator in a building being erected by the defendant, by which they were carried to the top of the building, where they were being laid into a wall by other workmen. There were no floors in the different stories, only occasional loose plank, and brick from time to time fell from the top of the building to the floor below, to the knowledge of the plaintiff, where he was passing in and out in the performance of his work. The plaintiff complained to the foreman of the defendant of this condition of things, insisted that it was dangerous, and the foreman promised to remedy the difficulty by laying a floor in an upper story, which would prevent the brick from falling to the floor below. Upon such promise being made the plaintiff continued his work, but knew the floor had not been laid or any provision made to render plaintiff's work less dangerous. A brick fell and injured him, and it was held that he could not recover. Mr. Justice O'Brien, writing the opinion of the court, said:

"It will be found, upon an examination of the cases relied upon by the appellant [the plaintiff], that none of them sustain the proposition that, with respect to a danger which the servant knows as well as the master, he is absolved from the charge of contributory negligence if he proceeds to ignore the danger, even though he does so on the assurances of the master that at some future time the defect will be repaired. If he proceeds with his work in the face of the obvious danger, and as a result is injured before it is remedied, he cannot be said to have been himself free from negligence."

In the case of McCarthy v. Washburn, 42 App. Div. 252, 58 N. Y. Supp. 1125, which was an action to recover damages for injuries sustained by the plaintiff by the caving in of a sand bank while he was engaged in removing sand therefrom, it appeared, as stated in the opinion of the court, that:

"He [the plaintiff] had worked in and about brickyards and upon railroads for upwards of thirty years, and was thoroughly familiar with the kind of labor upon sand banks in which he was engaged at the time of the accident. Two or three days before he was hurt he had a conversation with the defendant about the condition of the bank, saying that he was afraid of it, and was not going to work there any longer. To this the defendant responded, in substance, that he would secure the bank in a day or two, and keep the gravel back, so that there would be no danger. According to the plaintiff's testimony, the defendant said: 'I will secure the bank in a day or two, and I will warrant you that nothing will happen you.'"

Nothing, however, was done by the defendant in fulfillment of his promise, and, knowing that fact, the plaintiff went on with his work and was injured. The plaintiff, at the close of the evidence, was nonsuited. The judgment of nonsuit was affirmed by the appellate division. The court said:

"We think that this disposition of the case was fully justified by the testimony of the plaintiff himself. He knew everything that the defendant knew about the danger. He also knew that the defendant had taken no measures to lessen or avert it. No sort of constraint was exercised upon him. * * * Under all the circumstances the plaintiff was subject to the rule which was applied in the case of Hannigan v. Smith, 28 App. Div. 176, 50 N. Y. Supp. 845."

The learned justice then quotes with approval the language of Mr. Justice O'Brien in the Hannigan Case, to which attention has already been called.

So, in the case of Spencer v. Worthington, supra, which was a case where the plaintiff was injured because he used an oil can with a short spout to oil machinery while in motion. It appeared that he complained to the superintendent that the can was unfit for the purpose, and that he was promised that a can with a long spout would be furnished to him. He believed such promise would be fulfilled, but it was not, and he continued to oil the machinery with the can having a short spout, and was injured. It was held that no recovery could be had, notwithstanding the promise, its breach by defendant, and plaintiff's reliance upon it. Mr. Justice Cullen, in writing the opinion of the court in that case, reviews the cases of Hannigan v. Smith and McCarthy v. Washburn, supra, and cites them with approval, and, as we have already seen, held there can be no logical distinction between the assumption of risk by a servant using a simple or common tool or appliance and one using complicated machinery, provided the knowledge of the latter is as full and comprehensive, as to the machine or appliance used, as that of the former.

We believe we have now called attention to all the decisions of the courts of this state bearing upon the question involved. In none of them has it been decided that a servant may recover from the master for injuries sustained, and resulting from the operation of defective or dangerous machinery, where the servant was fully aware of the defects, and fully understood the danger, simply because the master promised, at some time in the future, which time expired after the injury, to remedy such defects, and failed to do so.

Judge Cooley, in his work on Torts (pages 559, 560), and Mr. Bailey, in his work on Master's Liability for Injuries to Servants (page 207), state the rule quite as broadly as is contended for by respondent's counsel, and so as amply to cover the case at bar, and justify an affirmance of the judgment. Judge Cooley says:

"If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing in the employment, engages to assume its risk. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that parties may and should, where practical, come to an understanding between themselves regarding matters of this nature."

Mr. Bailey, in stating the rule, uses substantially the same language. Neither of the learned authors, however, as it seems to us, at all satisfactorily explains how or why it is that the other rule which they lay down without qualification becomes abrogated and annulled simply by the fact that the master has promised to repair and has failed to do so, to the knowledge of the servant. The other rule adverted to, and which is universally recognized, is stated by Mr. Bailey (page 145) as follows:

"Therefore, it has come to be well settled that a master may conduct his business in his own way, although another method might be less hazardous, and the servant takes the risk of the more hazardous method as well, if he knows the danger attending the business in the manner in which it is car-

ried on. Hence, if the servant, knowing the hazards of his employment as the business is conducted, is injured while employed in such business, he cannot maintain an action against the employer because he may be able to show there was a safer mode in which the business might have been carried on, and that, had it been conducted in that manner, he would not have been injured."

If the suggestion was that the servant ceases to assume the risk after the expiration of the time within which the master promised to repair, and that from then on, for a reasonable time, the master was liable because of the violation of his contract, there would be some reason upon which to base such a rule; but, as laid down by the learned authors, it is not restricted to such a case, but is such as to make the master liable instanter upon making the promise, and without reference to whether or not the time he was to have in which to redeem his promise has expired. As in the case at bar, the servant agreed to run the defective cutter during the fore part of the week upon condition that the master would repair it at the end of that time. Before the time expired, before the master had violated his agreement,—and, so far as appears, he had no intention of violating it,—the accident occurred, and the plaintiff was injured. As before said, we think there is no principle of the law of contracts or of negligence upon which the master in such case should be held liable.

The doctrine asserted by Judge Cooley is approved by a large number of adjudicated cases, one, Hough v. Railroad Co., 100 U. S. 213, 25 L. Ed. 612, decided by the supreme court of the United States, and many decided by the highest courts of several of the Western and Southern states. Ferriss v. Machine Works, 90 Wis. 541, 63 N. W. 234; Stoutenburgh v. Dow, Gilman, Hancock Co., 82 Iowa, 184, 47 N. W. 1039; Lyttle v. Railway Co., 84 Mich. 289, 47 N. W. 571; Snowberg v. Paper Co., 43 Minn. 532, 45 N. W. 1131; Railroad Co. v. Donnelly, 70 Tex. 371, 8 S. W. 52, 8 Am. St. Rep. 608. Those cases, and several others cited by Judge Cooley, approve without qualification the rule as stated by him, and if followed clearly entitle the plaintiff to an affirmance of the judgment appealed from. While the authorities cited are entitled to great weight, in view of the decisions of the courts of this state to which attention has been called, and which we deem to be in conflict with those authorities, we are impelled to adopt what we believe to be the logical result of the decision of the court of appeals in Marsh v. Chickering, supra, and the rule laid down by the appellate division of the First and Second departments in Hannigan v. Smith, McCarthy v. Washburn, and Spencer v. Worthington, supra, and to hold that where, as in this case, a servant was engaged in operating machinery which he knew to be defective, and fully appreciated the danger incident thereto, the master is not liable for injuries sustained by the servant because of such defects, although, for the purpose of inducing the servant to continue in the employment, the master promised to remedy the defects within a specified time, which promise was relied upon by the servant, and induced him to remain, when such injury was sustained by the servant before the expiration of the time within which the master promised

to repair. It follows that the judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed upon questions of law only, the facts having been examined and no error found therein, and new trial ordered, with costs to the appellant to abide event.

WILLIAMS and HISCOCK, JJ., concur.

SPRING, J. I cannot concur with the majority of my Brethren in the conclusions reached in this case. We may regard it as settled by the verdict of the jury that had there been a shifter on this machinery accessible to the plaintiff he might have quickly stopped it, and prevented the frightful injuries which were inflicted upon him; also that the defendant's manager or superintendent realized the necessity of procuring this shifter, and had in fact obtained one which was in the building for the very purpose of enabling the machine to be stopped readily; further, that on the Saturday night preceding the accident the dangerous condition of the machine was sharply called to the attention of this superintendent, followed up by the statement of the plaintiff that he would quit unless a shifter was put on; that thereupon the superintendent, who represented the defendant, stated that he intended to shut down the next week for other repairs, and that the shifter would then be adjusted. The plaintiff, relying upon this promise, continued his work, and during Wednesday night following received his injuries by reason of the absence of this shifter. The cases cited in the prevailing opinion from the First and Second departments did not involve complicated machinery, but perfectly obvious risks, which any man, however simple minded, would understand; and, while there are remarks in the opinions which justify the conclusion that the plaintiff cannot recover, yet I think, so far as the case itself in each instance is concerned, it is not necessarily an authority against the plaintiff. In the case of Healy v. Ryan, 25 Wkly. Dig. 23, affirmed in 116 N. Y. 657, 22 N. E. 1130, the plaintiff was injured by a collision attributable to a defective brake. The proof showed that he had complained of the defect, and had been assured that it would be remedied. In the charge of the trial court, there being conflicting evidence as to this promise, it was left to the jury to pass upon as a question of fact, and its significance, therefore, was pointedly in the case. The general term of this department affirmed a recovery, commenting specifically on the effect of the promise to remedy these defects. That case, it seems to me, is quite analogous to the present one, and the court of appeals in affirming the judgment did so with the charge squarely presenting the question involved here, and must have assented to the doctrine which thus stood out prominently in the case. In the two or three cases in the court of appeals commented upon in the prevailing opinion, while not exactly in point, the court seems to recognize the doctrine that, where a promise is made by a master to his servant that he will repair a defect in a machine, this is equivalent to saying that he will assume

the risk of the defective machinery instead of the employé. The text writers and courts of other states and of the United States supreme court, so far as I can find, are substantially a unit on this proposition against the position contended for in the opinion of the court.

The doctrine of assumption of risks is contractual in its nature, and, of course, the parties by agreement can fix their relation. When the machinery is defective, the master may not desire to shut down his plant, but prefer to take the hazard of an accident to one of his employés. He therefore says to him: "Go on and perform the work as you have done before, and in a few days, when there is a lull in the business, I will remedy the defect." The servant assents to this, and is injured because of the defect, and within the time stipulated for making the repairs. It is no more than fair that upon a state of facts like this that the servant should be relieved from assuming the risks by implication imposed upon him when the danger is obvious. The only reasonable interpretation that can be put upon the promise of the defendant's manager is that it was expected to shift the liability to the defendant. Unless this is true, the promise of the defendant is meaningless, and does not inure at all to the benefit of the plaintiff. The master gets his work done, keeps his machinery moving, upon the strength of his promise, and still if injury occurs the plaintiff cannot recover, if the doctrine of the prevailing opinion is true, because he knew of the existence of the defect. The duty is imposed upon the defendant to provide reasonably safe machinery. That is the basic principle of these cases. He becomes aware that he has failed to do this. Notwithstanding this increased peril, he urges his servant to continue work on this dangerous machinery, promising to repair it within a definite time, and it is but just he should stand the consequences. In an arrangement of this kind the defendant, by reason of greater ability, greater contact with men, and more experience, has, in the vernacular of the farm, the "long end of the evener," and should be held to the legitimate consequences which flow from the promise he has made.

Nor can I see that this is fraught with the peril to a manufacturer contended for in the prevailing opinion. If the person injured is bent on committing perjury to make out a case, he can simply add to the promise as given by the plaintiff the additional fact that the master told him that, if he would stay and work, he (the master) would be responsible for any injuries sustained by reason of the defect called to the master's attention, and the doctrine of assumption of risks confessedly is not applicable to that servant.

Both upon principle and authority I am in favor of affirmance.

DAVY, J., concurs.