KAZMIR ANDRECSIK, PLAINTIFF IN ERROR, v. THE NEW JERSEY TUBE COMPANY, DEFENDANT IN ERROR.

Argued December 7, 1905—Decided June 18, 1906.

1. The plaintiff complained to the superintendent at ten o'clock in the forenoon that the machine upon which he was working was out of order. The defect was obvious. The superintendent said: "You go right ahead with the work; we are overloaded with work, and noon hour I will fix this for you." The repair was not made at the noon hour. Nevertheless, the plaintiff resumed work upon the obviously defective machine, and at three o'clock was injured by reason of the defect complained of. *Held*, that the promise to repair was definite and specific as to time of performance; that there was no question for the jury; that the plaintiff was properly nonsuited.

2. The servant assumes not only the ordinary risks incidental to employment, but as well all risks arising and becoming known to him during his service. The master, by promising to amend a defect complained of, as an inducement to the servant to continue, forthwith takes from the servant the risk and thereafter, and during the period for repair assumes it. Where the promise is general and indefinite the master's undertaking runs for a reasonable time (approving *Dowd* v. *Erie Railroad Co.*, 41 *Vroom* 451). Where it is to repair at a fixed time, it runs until the termination of the time fixed.

3. When the agreement to repair is general, *i. e.*, inferential, as to the time of its performance, if the master's promise is not performed within a reasonable time for its fulfillment, and the servant continues to incur the danger in the employment, after the lapse of such reasonable time the servant assumes the risk of injuries occurring thereafter. In such case there may be a question for the jury of reasonable time.

4. When the agreement to repair is not indefinite, but specific, as to the time of its performance, if the promise is not performed within the time specified for its fulfillment, and the servant continues in the employment after a manifest breach of the master's promise to repair, the assumption of risk by the master ceases, and the servant reassumes the risk of subsequent injuries therefrom. Where the time of performance is clearly fixed by the agreement of the parties, there is no question for the jury of a reasonable time for performance.

5. It does not follow that, whenever it is proved that a promise to repair was made and acted upon, the case is *prima facie* for the jury.

In tort. On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch, Jr.,* and *Samuel Kalisch.*

For the defendant in error, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

DILL, J. This action is brought to recover damages for personal injuries sustained by the plaintiff, while in the defendant's employ, through the defendant's alleged negligence.

The plaintiff, a man twenty-eight years of age, had been employed in the defendant's mill for about two years prior to the accident—eighteen months as helper, about two months as an assistant upon the machine, and about three months prior to the injury in charge of the machine at which he was injured. When placed in charge of the machine he was instructed as to its workings.

Prior to ten o'clock, in the morning of November 11th, 1903, the day upon which he was injured, the plaintiff discovered that the machine upon which he was working was out of order. He testified that this was very easy to see.

About ten o'clock he complained of this to the superintendent, who replied: "You go right ahead with the work; we are overloaded with work, and noon hour I will fix this for you."

What a third party understood the superintendent to say is not material to this decision. The foregoing is what the plaintiff asserts the superintendent promised him, and was the agreement to repair upon which the plaintiff relied in resuming work.

The plaintiff continued to work on the machine until the noon hour, quitting at twelve o'clock, without injury. He ate his lunch near the machine—in sight of it—and was in and about the place during the noon hour. During the noon hour, from twelve to one o'clock, the machine was not repaired, and this was apparent to the plaintiff. The defective

condition of the machine when the plaintiff resumed work was obvious.

At one o'clock the plaintiff resumed work and continued until three o'clock, when he was injured by this defective machine.

No evidence was offered in behalf of the defence.

The Chief Justice, who tried the case below, nonsuited the plaintiff, and, holding the promise to be definite as to the time of performance, laid down this rule: "Where the master says that he will repair the machine, or have it repaired, at a specific time, the employe is entitled to continue to operate the defective machine at the master's risk until that time has elapsed; but if, after that time, the master has not made good his word, and made the repairs, and the employe still continues to operate the machine, the risk shifts, and the employe assumes it, relieving the master."

The plaintiff in error seeks to review this ruling, and for that purpose this writ of error is prosecuted.

We are of the opinion that the rule laid down by the Chief Justice was correct, and that the nonsuit was proper.

The questions of law decisive of the case at bar have not been heretofore passed upon by this court.

The plaintiff was engaged in operating a machine which was obviously defective. He was aware of the danger incident to such defective condition.

The servant, by accepting employment or voluntarily continuing therein, with the knowledge or means of knowing the dangers involved, is deemed to have assumed the risk.

This rule the plaintiff seeks to avoid by proof that he notified the master of the defect, and that the master, for the purpose of inducing the plaintiff to continue in his employment, promised to remedy it.

The question presented is whether the servant was chargeable, in spite of the promise, with the assumption of the risk in question and as a conclusion of law. The decision must, in the first place, depend upon the character of the promise to repair. Was it express or inferential as to time of fulfillment? If inferential, there may have been a question for

the jury. If express, there was no question for the jury on that point.

The words "noon hour" are definite terms: "Noon—midday and in exact use twelve o'clock."—*Cent. Dict.* "Hour— a particular time; a fixed or appointed time."—*Id.*

"Noon" designated the beginning of the period, *i. e.,* twelve o'clock; "hour," the duration of the period.

It is clearly shown by the evidence that the term "noon hour" was in common use, and was well understood by both parties to mean from twelve o'clock noon to one o'clock in the afternoon.

The plaintiff says he quit work at twelve o'clock and went to work at one o'clock.

Again, he was asked if he worked "before the noon hour" on the day on which he was injured. "Yes, sir," he answered, "I started at seven and worked until twelve."

The words "noon hour" are used by the plaintiff and his witnesses, and always as meaning from twelve o'clock noon to one o'clock in the afternoon.

In *King-Ryder Lumber Co.* v. *Cochran,* 71 *Ark.* 55, the plaintiff, who was running an edging machine in a lumber mill, discovered a defect in the machine in the morning and informed the foreman, who told him "to go on and run it until noon, when he would have it repaired."

The court treated this as a promise to repair at a definite time, and it is cited by subsequent authorities as a definite promise. Otherwise the case is not in point.

In the case before us, we are of the opinion that the promise to repair was not general, but specific, as to time of performance.

The time when the promise to repair should have been fulfilled is too clear for reasonable controversy. There was no need of submitting that question to the jury, or any other question bearing upon the subject.

In discussing the further questions involved it should be noted that in this case:

*First.* The promise to repair, made after the work was begun, was definite as to the time of performance.

*Second.* The accident did not occur between the time of the making of the promise and before the end of the period fixed for its fulfillment.

*Third.* The injury was subsequent to (*a*) the complaint, (*b*) the promise, (*c*) the agreed time of performance, and (*d*) the master's default.

In resuming work under these circumstances, was the risk the servant's or the master's?

The two recent cases in the Supreme Court (*Dowd* v. *Erie Railroad Co.*, 41 *Vroom* 451, and *Dunkerley* v. *Webendorfer Machine Co.*, 42 *Id.* 60), have not heretofore been before this court.

In both the master's agreement was indefinite as to the time when the repair was to be made.

In the Dowd case the promise was to have it attended to "as soon as he could."

In the Dunkerley case the agreement was to remedy the fault "at the first opportunity."

In the Dowd case, Mr. Justice Swayze states the law to be as follows:

"The rule that the servant assumes not only the ordinary risks incident to the employment, but also such special features of danger as are plain and obvious, and also such as he would discover by the exercise of ordinary care for his personal safety, is well established in this state [citing cases].

"The servant assumes, as well, those risks which arise or become known to him during the service as those in contemplation at the original hiring. *Dillenberger* v. *Weingartner,* 35 *Vroom* 292 (*Court of Errors and Appeals,* 1899).

"To the rule that the servant assumes the obvious risks of the employment, an exception is made where the master has promised to amend the defect or to make the place safe, and the servant continues the work in reliance upon the promise. * * *

"The master is exempted from liability in the case of obvious risks for the reason that the servant, by continuing in the employment with knowledge of the danger, evinces a willingness to incur the risk, and upon the principle *volenti*

*non fit injuria.* But when the servant shows that he relied upon a promise made to him to remedy the defect, he negatives the inference of willingness to incur the risk. In such a case this inference can only be drawn when the servant continues the work, although the promise is not performed within a reasonable time." 41 *Vroom* 451 (at *p.* 455).

We are referred to the decision of the Supreme Court of the State of New York, in *Rice* v. *Eureka Paper Co.,* 70 *App. Div.* 336, as the leading authority for the insistment that the Dowd case should not be approved by this court.

The answer to this argument and the citation in its support is twofold.

In the first place, the decision of the New York Supreme Court in the Rice case is not in conflict with the Dowd case.

In the Dowd case, the promise to repair was indefinite as to time of performance by the master. The court construed it to be a general promise. In the Rice case, the New York Supreme Court construed the promise to repair as specific, and based its conclusion upon that construction of the promise. 70 *App. Div.* (at *pp.* 342 *et seq.*) It held that, in a case where the promise was to repair at a definite time, the risk in the *interim* between the time of the making of the promise and the time set for its performance was that of the servant, and not of the master. *Id.* 354.

In the second place, the Court of Appeals of New York reversed the Supreme Court. *Rice* v. *Eureka Paper Co.,* 174 *N. Y.* 335; reversing 70 *App. Div.* 336.

The Court of Appeals overruled the holding below as to the character of the promise to repair; declared that it was not specific as to time of performance (*Rice* v. *Eureka Paper Co.,* 174 *N. Y.* 385) (at *p.* 397); construed it as a promise to repair generally, indefinite as to the time of its performance (*Id.* 398), and, proceeding upon that construction, established the law of that state in harmony with the doctrine of the Dowd case.

The doctrine of the Dowd case is supported by the authorities cited by Mr. Justice Swayze, by the decision of the Court of Appeals of New York in the Rice case, by the eminent

text-writers and the leading cases ably marshaled in the opinion therein, and, in addition, by the following authorities: *Ray* v. *Diamond State Steel Co.*, 2 *Penne.* (*Del.*) 525; *Boyd* v. *Blumenthal*, 3 *Id.* 564; *Belair* v. *Chicago, &c., Railroad Co.*, 43 *Iowa* 662; *Buehner* v. *Creamery Package Manufacturing Co.*, 124 *Id.* 445; *Foster* v. *Chicago, &c., Railroad Co.*, 127 *Id.* 84; *Brown* v. *Levy*, 108 *Ky.* 163; *Taylor* v. *Nevada, &c., Railroad Co.*, 26 *Nev.* 415; *Pleasants* v. *Raleigh, &c., Railroad Co.*, 95 *N. C.* 195; *Barney Dumping Boat Co.* v. *Clark*, 112 *Fed.* (*C. C. A.*) 921; 1 *Labatt's Master and Servant* 1209, § 427b.

The rule of the Dowd case is so generally recognized as a part of the jurisprudence of this country and is so strongly supported by reason and justice as to justify its adoption. We accordingly approve the decision of the Supreme Court of this state in *Dowd* v. *Erie Railroad Co.*, 41 *Vroom* 451.

The approval of *Dunkerley* v. *Webendorfer Machine Co.*, 42 *Vroom* 60, follows, as a matter of course.

Thus far we have dealt with those cases where the master's promise to repair was general, and not specific, as to time of performance.

We come, now, to consider the application of the rule to those cases where, as in this case, the time of performance is definitely fixed by the agreement of the parties. The authorities where the promise has been of this character are comparatively few.

Two questions arise in a case where the promise to perform is definite:

*First.* Is the *ad interim* risk between the making of the promise and the termination of the period fixed therein for its performance the master's or the servant's?

It has been held by authorities of repute that during the *interim* the servant assumes the risk, on the ground that before the time definitely agreed upon for the making of the repairs he can have had no expectation that such repairs would meanwhile be made; and therefore cannot, in the *interim*, have continued his service because of such expectation. *Standard Oil Co.* v. *Helmick*, 148 *Ind.* 457, and *Rice* v.

*Eureka Paper Co.,* 70 *App. Div.* 336 *(New York Supreme Court),* are generally cited in support of this theory.

These decisions are dependent upon facts and supported by principles not involved here. Their conclusions are reached by divergent and not harmonious lines of reasoning. The Supreme Court of Indiana subsequently, in the *Potter Case, post,* disavowed this doctrine. The Rice case was reversed by the Court of Appeals of New York, although upon another point.

We do not agree with the rule in support of which these cases are cited and decline to adopt it.

It has also been held, and with better reason, that, as in the case of a general promise, carrying with it an implication of performance within a reasonable time, so also in the case of a promise to remedy a defect at a definite and agreed time, the master *eo instante* assumes the risk from the time of the making of the promise up to and including the expiration of the time specified for its fulfillment. *Louisville Hotel Co.* v. *Kaltenbrum,* 80 *S. W. Rep.* 1163; upon application for rehearing, 82 *Id.* 378; *King-Ryder Lumber Co.* v. *Cochran,* 71 *Ark.* 55; *Anderson* v. *Seropian,* 147 *Cal.* 201; *McFarlan Carriage Co.* v. *Potter,* 153 *Ind.* 107 (at *p.* 114); overruling on this point (at *p.* 116) *Standard Oil Co.* v. *Helmick, supra.*

The rule that a promise to repair made by the master, acted upon by the servant, creates an assumption of risk by the master, beginning *instanter* upon the making of the promise and continuing thereafter to the end of the period named for the repair, is supported by sound reason, by the weight of authority, and is in accord with the reasoning of the Dowd case.

*Second.* At whose risk does the servant continue his work after the lapse of the time specified for the making of the repair and after the master has obviously defaulted in the performance of such promise?

Upon this point we are referred to the following cases: *Louisville Hotel Co.* v. *Kaltenbrum,* 80 *S. W. Rep.* 1163 *(Court of Appeals of Kentucky,* 1904); *Eureka Company*

v. *Bass*, 81 *Ala.* 200 (1886) ; *Trotter* v. *Chattanooga Furniture Co.*, 101 *Tenn.* 257 (1898).

The facts in the Louisville hotel case differ from those in the case at bar, since the injury there occurred between the making of the promise and the time set for its performance. That case does not decide that the master's assumption of risk terminates with the time set for the performance of the promise, which is the question before us. The case goes no further than to hold that upon the making of the promise the master *instanter* assumes the risk and is responsible for an injury occurring between the time of the making of the promise and the time appointed for its fulfillment.

In the Bass case, the complaint of the servant was of a defective fuse, and the master promised "to get other fuse," and told him to "do the best he could with what he had." The court treated this as a general promise involving the question of a reasonable time, but in arriving at its conclusion it used the following language pertinent to the question before us: "The injury, in other words, must have occurred within the time at which the defects were promised to be removed. If the employe continues to expose himself to the danger by remaining in the service longer than this, he does so in face of the fact that the promise of the employer is violated, and that he has no reasonable expectation of its fulfillment. He can no longer, therefore, rely upon the promise, and must know that his continuance in service under such circumstances is equally as hazardous and hopeless of remedy as if no assurance or promise had ever been made. A promise already broken can afford no reasonable guarantee of the fulfillment of any expectation based on its disappointed assurances."

In the recent case of *Gunning System* v. *Lapointe*, 212 *Ill.* 274 (1904), there is also a *dictum*—*dictum* because the promise in the case was a general one—that "if the promise is to repair by a fixed time, then, after the expiration of the time fixed, the servant assumes the risk from the defects complained of."

Trotter *v.* Chattanooga Furniture Company is the only one of the three cases cited which is in point.. In that case the promise was definite to repair "in the morning." The promise was not kept, but the servant continued his work, and the injury occurred ten days after the time set for the performance of the promise.

The court held that the servant had reassumed the risk, citing in support of its decision the Bass case, relying upon the language of that case already quoted.

In the Trotter case the court, affirming the judgment below nonsuiting the plaintiff, said: "We do not think it would have been proper, in this case, to have submitted to the jury the question as to what was reasonable time. The promise fixed the .time."

A well reasoned authority in point is the decision of the Supreme Court of Wisconsin (1901), in *Albrecht* v. *Chicago and Northwestern Railway Co.,* 108 *Wis.* 530. In that' case a locomotive fireman was ordered, about five o'clock in the afternoon, to go on a trip, which was subsequently made at ten o'clock in the evening. At seven-fifteen in the evening he went on board the engine and performed various duties. At eight o'clock in the evening he complained to the engineer of the absence of a shield over the glass indicating the oil-supply, stating that he had searched for the shield and failed to find it, adding, "You must get a shield for this lubricator," to which the engineer replied, "All right, I will get one." The engineer did not` keep his promise. The fireman was in and about the cab from eight o'clock to ten o'clock in the evening, and then went on the trip in spite of the fact that the engineer had not kept his promise, and although the fireman saw that the shield was not in its place. At one o'clock in the morning the glass burst and he was injured by reason of the absence of the shield.

The court below held the engineer's undertaking to be a general promise, and left it to the jury to determine the question of reasonable time. The Supreme Court, reversing the holding below, construed the promise made at eight

o'clock in the evening to be a promise on the part of the engineer to furnish the shield before the trip was made at ten o'clock in the evening, and held the promise to be definite as to time of performance, and that there was no question to be submitted to the jury, saying:

"When the time expired for the engineer to redeem his promise, under the circumstances indicated, respondent was no longer protected thereby in his right to hold defendant responsible for the consequences of the danger.    *    *    *

"In proceeding thereafter in the defendant's service, he voluntarily assumed the risk of which he had complained as a part of his contract of employment, and is remediless for what followed."

We agree with Mr. Labatt, in his recent work on "Master and Servant," that "the only rational view seems to be that as soon as the period contemplated for the removal of the dangerous conditions terminated the servant's position is precisely what it would have been if no promise had been given; that is to say, he reassumes the risk." 1 *Labatt Mast. & Serv.* 1204, § 425.

Upon the point of the termination of the master's liability, Mr. Justice Swayze, in the Dowd case, says: "The failure to perform the promise [to repair "as soon as he could"] within a reasonable time indicates that it will not be performed, and the continuance in the work thereafter justifies the inference that the servant did not rely upon performance of the promise, but was willing to take the risk. He is therefore, in such case, held to have assumed the risk, notwithstanding the promise." 41 *Vroom* (at *p.* 456).

This proposition relating to a general promise is supported by the following authorities: *Eureka Company* v. *Bass,* 81 *Ala.* 200; *Illinois Steel Co.* v. *Mann,* 170 *Ill.* 200; *Gunning System* v. *Lapointe,* 212 *Id.* 274; *Burns* v. *Windfall Manufacturing Co.,* 146 *Ind.* 261; *Breckenridge Company* v. *Hicks,* 94 *Ky.* 362; *Stalzer* v. *Packing Company,* 84 *Mo. App.* 565; *Gulf, &c., Railroad Co.* v. *Brentford,* 79 *Tex.* 619; *Stephenson* v. *Duncan,* 73 *Wis.* 404; *Corcoran* v.

*Milwaukee Gaslight Co.,* 81 *Id.* 191; *Ferriss* v. *Berlin Machine Works,* 90 *Id.* 541.

Similarly, where the agreement as to the time of performance is by the parties clearly defined, the failure to perform the promise within the agreed time indicates that it will not be performed, and a continuance of the work thereafter justifies the inference that the servant no longer relied upon the performance of the promise, but was willing to take the risk. In such case, also, the servant must be held, where there is a manifest breach of the agreement to repair, to have reassumed the risk at the expiration of the time fixed for the performance of the master's promise.

The principle applicable to both classes of cases is that when the time appointed for the removal of the conditions giving rise to the danger expires, whether that period be expressly or impliedly fixed, the servant's relation to the master is precisely the same as if no promise had been made. He is relegated back to his original position and reassumes the risk. After the master has manifestly defaulted in his promise to repair, the servant resumes work with no existing contract on the part of the master to assume the risk, and therefore continues at his (the servant's) risk.

In the present case, where the promise was to repair the defect at a specified time, and where the master had manifestly failed to make the repair within the time specified, the servant, in resuming work thereafter, brought himself again within the original rule, and assumed not only such special features of danger as were plain and obvious, but such as he would discover by the exercise of ordinary care for his personal safety.

The conclusions which we have reached negative the proposition that whenever it is proved that a promise to repair was made and acted upon the case is *prima facie* for the jury.

The master, in the making of the promise, and the servant, in acting upon it, fix their mutual relation.

Where the promise to make the repair is indefinite or inferential as to the time of the performance, there may arise

a question for the jury of reasonable time—on the part of the master for performance, and consequently on the part of the servant for continuing to incur the risk in the expectation that the master will perform.

Where, however, the promise is express as to time of performance, the rule is otherwise.

A promise made by the master, acted upon by the servant, to repair a specified defect at a definite time thereafter, creates an assumption of the risk by the master. This assumption of risk begins forthwith upon the making of the promise and continues thereafter and throughout the period fixed for the making of the repair; but this undertaking of the master terminates and his liability thereunder ceases at the end of that period. The termination of the master's undertaking and the termination of the period fixed for repair are identical in point of time.

In such case it would be error to submit to the jury any question relating thereto which would enable the jury to find, in conflict with the terms of the contract, that the responsibility on the part of the master still existed after the expiration of the period during which the master had agreed to undertake it.

As a rule, whether the promise is general or definite is a question for the court.

It follows, therefore, both on principle and by authority, that the nonsuit below was proper.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, GARRETSON, HENDRICKSON, SWAYZE, REED, VREDENBURGH, VROOM, GREEN, GRAY, DILL.    12.

*For reversal*—PITNEY, BOGERT.    2.