JOHN PANKOW, PLAINTIFF IN ERROR, v. SWIFT & COMPANY, DEFENDANT IN ERROR.

Submitted June 22, 1909—Decided November 30, 1909.

1. Where the plaintiff, finding a machine at which he was employed imperfectly working, complained to one in authority, who the jury, under the testimony, might infer was the master's representative, and such person in authority promised to have the machine repaired over night, and on the following morning, in reply to the plaintiff's inquiry, said the machine was repaired and directed him to go to work, which, for over an hour, the plaintiff did, and worked at the machine, and, while so working, was injured by the machine tearing loose from the floor to which it seemed to be secured—*Held*, that these facts required the submission to the jury of the question whether the risk was obvious, and whether the plaintiff assumed it.

2. The testimony in this case was sufficient to warrant its submission to the jury, both upon the question of the employe's authority to represent the master, and upon the question of the obviousness of the risk and the assumption thereof by the plaintiff. *Held*, under the circumstances, a nonsuit was error.

On error to the Hudson Circuit.

For the plaintiff in error, *William C. Gebhardt* and *Herbert Clark Gilson.*

For the defendant in error, *Bedle & Kellogg.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff in error was nonsuited at the Hudson Circuit upon the following state of facts:

He was employed by the defendant to fill a lard and fat machine, which was operated in defendant's factory for the purpose of cutting and grinding lard. The lard was placed in a funnel-shaped device at the top of the machine, and was led down to the bottom of the funnel, where a revolving shaft cut the lard and carried it out into a vat.

On the day before the accident occurred the machine indicated a disarrangement by the looseness of the cogs, which caused it to act in an irregular manner. The plaintiff called the attention of Mr. Kennedy, who was in charge of that room and who was generally designated as the "boss," to the fact that the machine was out of order, and Kennedy replied that he would fix it at night, and it would be all right. The next morning the plaintiff went to the office and asked Kennedy if the machine had been put in order and he said, "It is all fixed. You can go to work." Upon this assurance the plaintiff went to work with Kennedy at his side for twenty minutes, and continued to operate the machine without mishap until about eight-thirty o'clock, when, in the plaintiff's language, "the wheel flew off and the band fell off and the screws got loose from the floor and the machine started violently to shake as though the whole business was coming down, and at that time my arm was caught," and the injuries, for which recovery is sought in this suit, resulted.

The nonsuit was granted upon the ground that Kennedy in giving the order to repair did not represent the master, and that, if he did represent it, the danger was an obvious one which plaintiff assumed as a factor in his employment.

The effect of the case of *Spencer* v. *Haines,* 45 *Vroom* 13, in the Supreme Court, upon which the learned trial judge relied as a basis for the nonsuit, was misconceived, because, to us, it affords the *ratio decidendi* for a denial of the motion. In that case the learned Chief Justice gives as one of the grounds upon which the case would have been submitted to the jury, had the testimony warranted it, the fact that the defendant's liability could be predicated upon facts and circumstances from which the conferring of such authority might fairly be inferred, and concludes the opinion with the statement that "in the absence of proof of any fact from which authority, either real or apparent, on the part of the engineer to bind the defendant by making the promise to repair could fairly be inferred," it was error to leave the question to the jury.

But the differentiating feature of the case at bar is that there is testimony going to show Kennedy's authority to represent the master, from which the jury might fairly infer that such authority in fact existed. He had entire charge of this department of defendant's business; hired and discharged employes and supervised the work; upon this floor he had his "office," and there heard complaints and sent for mechanics to make repairs to the machinery, and when he sent for them the machine hands who made repairs came in response.

In Spencer *v.* Haines there was no "proof of any acts done or words spoken by the defendant which would tend to create in the mind of Spencer a belief that a promise to repair made by the engineer would be equivalent to a promise made by himself." In the present case there was proof that complaints made to Kennedy had the desired effect of bringing about repairs, and this fact would justify, and, in the absence of evidence to the contrary, require an inference that Kennedy was authorized to act for the defendant in this respect.

In the case of *Cicalese* v. *Lehigh Valley Railroad Co.,* 46 *Vroom* 897, also referred to at the trial, the only evidence as to the authority of the foreman was that he was foreman or boss of the gang of workmen.

It is, however, unnecessary to pursue this subject further, since the promise to repair was to repair at night, and the accident did not happen until the next morning, when the plaintiff was no longer justified in relying upon the promise to negative the inference which would otherwise be drawn, that he had assumed the risk. *Andrecsick* v. *New Jersey Tube Co.,* 44 *Vroom* 664.

The question presented by this case, therefore, is whether when the plaintiff resumed work in the morning the want of repairs was obvious?

The court in the Andrecsick case held that if the defendant failed to repair within the definite time fixed by the promise, the plaintiff would be deemed to have again assumed the risk, provided the want of repair was apparent to him. Judge Dill, speaking for this court, repeatedly used language to that effect.

He speaks of the case as one where "the master has obviously defaulted in the performance of such promise," and says, "the servant must be held, where there is a manifest breach of the agreement to repair, to have reassumed the risk at the expiration of the time fixed for the performance of the master's promise." This carefully guarded language is in harmony with the language quoted in the opinion from *Labatt on Master and Servant,* that as soon as the period contemplated for the removal of the dangerous conditions terminates, the servant's position is precisely what it would have been if no promise had been given, that is to say, he reassumes the risk. The author, of course, means that the servant reassumes the *obvious* risk, since otherwise his position would not be precisely the same as if no promise had been made.

There is nothing in this case to show that the risk was obvious when the plaintiff went to work in the morning. He was entitled to assume that the promise had been performed as the duty of the defendant required, and he had, in addition, the assurance of Kennedy that he could go to work; that everything was all right. In the absence of facts charging him with knowledge to the contrary, he had the right to rely on this assumption and this assurance.

The question whether there was evidence from which negligence of the defendant can be inferred was also argued, and *Bien* v. *Unger,* 35 *Vroom* 596, was relied on. The decisive point in that case was there stated by Justice Garrison: "An occurrence that remains unaccounted for after the extraordinary scrutiny to which this one has been subjected cannot, with any show of reason, be said to have been discoverable by the exercise of ordinary care." What happened in that case was that a trip-hammer that should have remained suspended above a die until released by pressure upon a treadle, descended without apparent cause. But, inasmuch as the trip-hammer was intended to descend under proper circumstances, the mere fact that it descended was not in itself enough to justify an inference of negligence.

The present case is very different. If the jury accepted the plaintiff's account of this accident, they could hardly escape

an inference of negligence; machines that are properly secured do not behave in that way. The case resembles, rather, *Kalker* v. *Hedden,* 43 *Vroom* 239.

The account given of this accident by the plaintiff is said to be improbable, but that was a question for the jury to determine.

The nonsuit was erroneous and the judgment should be reversed and a *venire de novo* issued.

*For affirmance*—VOORHEES, J.    1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ.    15.