## THE GUNNING SYSTEM

*v.*

## CHARLES LAPOINTE.

*Opinion filed October 24, 1904—Rehearing denied December 9, 1904.*

1. APPEALS AND ERRORS—*what not a waiver of error in refusing peremptory instruction.* By asking and procuring instructions submitting to the jury the question whether plaintiff assumed the risk of injury, after the court's refusal of an instruction directing a verdict for defendant, the defendant does not waive his right to assign such refusal as error.

2. MASTER AND SERVANT—*cases where a promise to repair suspends assumption of risk.* The cases where a promise by the master to repair suspends the servant's assumption of risk, are those where particular skill and experience are necessary to know and appreciate the defect and its danger or where machinery or materials are used of which the servant can have but little knowledge.

3. SAME—*when promise to repair does not suspend risk.* The master's promise to repair a defect does not suspend the servant's assumption of the risk where the servant is engaged in ordinary labor or with tools of simple construction, which the servant understands as fully as the master.

4. SAME—*time for which promise to repair suspends assumption of risk.* If the master's promise is to make repairs by a fixed time the promise does not suspend the servant's assumption of the risk beyond that time, and if the promise is indefinite as to time the servant cannot work longer than a reasonable time for making the repairs without again assuming the risk.

5. SAME—*when a servant assumes risk.* An experienced sign painter who works for three days upon a bulletin board after exacting a promise from his foreman to put an additional brace upon the board, which could have been done within a few hours, assumes the risk of injury consequent upon the absence of the brace, where he has full knowledge of the defect and the danger therefrom.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

F. J. CANTY, and C. H. VANALSTINE, (J. C. M. CLOW, of counsel,) for appellant.

GEMMILL & FOELL, for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This action is brought to recover damages for injuries sustained by appellee through appellant's alleged negligence. On the trial in the circuit court of Cook county the jury returned a verdict in favor of the plaintiff (appellee here) for the sum of $13,250. The trial court, on motion for a new trial, directed a *remittitur* of $3250, and judgment was entered for $10,000, which was affirmed by the Appellate Court for the First District, and a further appeal is prosecuted to this court.

The facts as shown by the record are, briefly, as follows: On February 23, 1901, Charles Lapointe (appellee) was

working for the Gunning System (appellant) in Milwaukee, Wisconsin, his business being that of a sign painter. The company had recently erected a bulletin board in Milwaukee, and appellee had been sent there from Chicago to assist a man by the name of Fromm in painting this board. Fromm had for ten years been a foreman for the Gunning System and its predecessor. Appellee had worked for the company between two and three years and had worked as sign painter for about ten months. A few days before the appellee was injured he was directed by Mr. Reich, who was general fore- man for the Gunning System, to go to Milwaukee and re- port there to Fromm, and was told that he would receive all his instructions from Fromm, who was to be his imme- diate foreman. Appellee and Fromm arrived in Milwaukee on Sunday, the 17th day of February, and on the following day they called at the office of one Fitzgerald, who was superintendent and manager for appellant in Milwaukee, and were by him directed to the place and informed as to the manner in which they should do their work. They went to the bulletin board on that day and did some work and dis- covered that the bulletin board was incomplete. On Tues- day they did some additional work, and on Tuesday evening went to Fitzgerald and made complaint about the weakness of the board. It appears from the evidence that the bulletin board was built with tongue and grooved planks one inch thick, set perpendicular, the upright boards being nailed on to two cross-pieces about one inch thick and three inches wide, the upper cross-piece being about two and a half feet from the top and the lower one about the same distance from the bottom of the boards. Braces extended from the cross-pieces back of the boards to the ground. There was no cross-piece over the front of the bill board, nor was there a strip or board running across the top of the bulletin board, as is generally used in the construction of such boards. Fitz- gerald directed them to return the following morning, which they did, and then Fromm, in the presence of appellee, told

Fitzgerald that the bulletin board needed fixing; that it was shaky and weak, and that he did not think it was safe. He also stated it was not properly braced, and there was no board along on top of the sign board to protect the hook. Fitzgerald then said, "You are always kicking, anyway, every time you come up here, and you better go back and work." Fromm replied, "I will not till you fix that sign." Fitzgerald then said, "If that is all you want, go back to work and I will have that band put on for you." Then Fromm said to Lapointe, "We will go back to work." The two did return to work and worked Wednesday and Thursday. Friday being a holiday they did not work, and on Saturday Fromm returned to Chicago. Appellee remained at work, and in the afternoon, while he was upon the scaffold, one of the large hooks which were thrown over the top of the boards to hold up the scaffold upon which he stood, pulled through the top of the bulletin board, owing to the top band not having been put in place, allowing one end of the scaffold to fall, throwing Lapointe from the scaffold to the ground and severely injuring him.

Upon this state of facts plaintiff contends that the assumption of risk which would ordinarily bar his right of action was suspended during the running of the promise to repair and for a reasonable time after the period when it could have been fulfilled. The defendant meets this argument with the assertion that such a promise, if made, would not suspend the risk assumed by the employee, because it was a promise that could have been fulfilled in an hour and a half's time, as shown by the evidence, and he having continued in the work for three days after the promise to remedy the defect, thereby assumed the risk.

At the close of the plaintiff's evidence and at the close of all the evidence the defendant (appellant) asked the court to give a peremptory instruction to find the issues for the defendant, which the court refused to do, and it is assigned as error that the court refused to give said instruction. It is

claimed by appellee that the giving of other instructions afterwards, submitting to the jury the question as one of fact whether appellee continued to work on the board longer than a reasonable time for the appellant to repair the defect, waives the right to have the question again passed upon as one of law.    But in this contention we cannot agree with the appellee, as we have construed the rule of law to be that the giving of the peremptory instruction is in the nature of a demurrer to the evidence, and saves the question as to whether or not the evidence fairly tends to support plaintiff's cause of action. (*Boyce* v. *Tallerman,* 183 Ill. 115; *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 id. 132.) And if, as a matter of law, the evidence does tend to fairly support the cause of action the peremptory instruction was properly refused, and if it does not, then it should have been given.

The narrow and concrete question presented by these conflicting claims is whether such a promise as here made at once absolves the employee from the risk which he had theretofore voluntarily assumed, or whether the risk is continued until the time when the master's promise to repair is fulfilled, and what would constitute a reasonable time for the fulfillment of the promise to repair.    We find that the authorities in this State all practically agree.    While, as a broad, general proposition, the master is required to furnish the servant a reasonably safe place in which to work, it is also true that if the defect is so open and obvious that the servant does see and know of the existence of the defect, and the danger arising therefrom is apparent and known to him or within the observation of a reasonably prudent man in his situation, and the servant enters upon and continues the work, he is held to assume the risks and hazards of the employment due to such conditions.    The servant may, however, in some cases, suspend the operation or force of the rule of assumed risk as to such defects and dangers by complaining to or informing the master thereof and obtain-

ing from him the promise to repair the defects and obviate the danger. It is not in all cases that the servant may relieve himself from the assumption of the risk incident to defects and dangers of which he has full knowledge by exacting from the master a promise to repair. The cases where the rule of assumed risk is suspended and the servant exempted from its application under a promise from the master to repair or cure the defect complained of, are those in which particular skill and experience are necessary to know and appreciate the defect and the danger incident thereto or where machinery and materials are used of which the servant can have little knowledge, and not those cases where the servant is engaged in ordinary labor or the tools used are only those of simple construction, with which the servant is as familiar and as fully understands as the master. (*Webster Manf. Co.* v. *Nisbett,* 205 Ill. 273; *Illinois Steel Co.* v. *Mann,* 170 id. 200; *Meador* v. *Lake Shore and Michigan Southern Railway Co.* 138 Ind. 290; 37 N. E. Rep. 721; *Marsh* v. *Chickering,* 101 N. Y. 396; *Power Co.* v. *Murphy,* 115 Ind. 570; 18 N. E. Rep. 56; *St. Louis, Arkansas and Texas Railway Co.* v. *Kelton,* 18 S. W. Rep. 933; Bailey on Master and Servant, sec. 3103; Barrows on Negligence, pp. 121, 122.) If it be held that the case at bar is one that falls within the exception, and, pending the time for promised repairs, exempts the servant from the assumption of the risk, then it is proper to consider and determine the meaning and terms of the rule itself.

From a careful review of the authorities we are disposed to the view that where the servant finds that the machinery with which he is to work is out of repair and dangerous to work with, or that the place in which he is to work is dangerous, he may complain to the master and exact from him a promise to repair, and if the defect is not such that it so endangers the person of the servant that a reasonably prudent man would not continue to work with the machinery or in the place assigned, the servant may continue the work

under the promise to repair without being held, as a matter of law, to have assumed the risk. If the promise is to repair by a fixed time, then after the expiration of the time fixed the servant assumes the risk from the defects complained of. If the promise to repair is without fixing the time within which the repairs shall be made, the servant may continue the work for a reasonable time, taking the character of the defect into consideration, within which the repairs could or ought to be made, and at and after the expiration of such reasonable time within which to make the repairs, if they are not made and if the defects are open and known to the servant and no new promise to repair is made and the servant continues the work, he assumes the risks incident to the defects of which he complained. In *Illinois Steel Co.* v. *Mann,* 170 Ill. 200, we said (p. 210) : "While it is true some cases hold the rule to be, that the servant, after having informed the master of any defects in machinery, tools, appliances or surroundings of his work, and the master having promised to repair and make safe such defects, has the right to rely upon such promise and continue in the employ of the master expecting such promise to be fulfilled, yet the rule in this State, and also in most other States, holds that such expectation on the part of the servant may continue only for a time reasonable for such repairs to be made or defects remedied, and if not so made within a reasonable time, the servant, having full knowledge of such defects, will be considered to have waived the same and subject himself to all the dangers incident thereto,"—citing, also, *Swift* v. *Madden,* 165 Ill. 41 ; *Counsel* v. *Hall,* 145 Mass. 468 ; *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44 ; *Stephenson* v. *Duncan,* 73 Wis. 404 ; *Gowan* v. *Hardy,* 56 Fed. Rep. 974 ; *Corcoran* v. *Milwaukee Gas Light Co.* 51 Wis. 191.

After the servant has discovered the defect and shown his appreciation of the danger by exacting from the master the promise to repair, and continues in the employment after the expiration of the reasonable time for making the repairs

without the same having been made and without exacting or receiving a further promise to repair, it is neither unjust nor a hardship to the servant to hold that he assumes the risk, and the question of negligence is no longer in the case. In the case at bar the evidence discloses that there was no time fixed by the master in which to make the repairs complained of, and it is conceded, and the undisputed evidence shows, that to have made the repairs would not require to exceed two or three hours' time. Appellee not only continued to work a few hours, but continued to work for two days, took a holiday the third day and resumed work the fourth day and worked until after four o'clock of that day, when his injury was incurred,—all after he had complained to the master and the master had promised to repair the defect which caused the injury. The offering of the peremptory instruction therefore raises the question whether or not, as a matter of law, appellee assumed the risk by continuing at the work for a longer period than was necessary for the master to have made the repair. Upon that question, and under the undisputed evidence appearing in this record and under the view of the law as herein above expressed, we feel constrained to hold that the appellee, by continuing the work after the reasonable time within which the repairs could and ought to have been made, with full knowledge of the defect and thorough appreciation of the danger, must be held to have assumed the risk of the defect and danger which caused his injury, and that the peremptory instruction to find for appellant should have been given.

Other questions are made and discussed, but we deem it unnecessary to pass upon them, as the views already expressed dispose of the case.

The Appellate Court erred in not reversing the judgment of the circuit court. The judgments of the Appellate Court and of the circuit court are therefore reversed, and the cause remanded to the circuit court.

*Reversed and remanded.*