## Joseph Czajkowski v. James E. Robinson.

### Gen. No. 12,065.

1. BILL OF EXCEPTIONS—*how order extending time for presentation of, construed.*  Where time is given for the filing of a bill of exceptions and before the expiration of such time an order is made extending the time for filing the bill, the time so given is to be computed from the expiration of the time given by the former order, and not from the date of the last order.

2. · PEREMPTORY INSTRUCTION—*when should not be given.*  Such an instruction should not be given where the evidence for the plaintiff, with all the inferences that may properly be drawn therefrom, fairly tends to prove a cause of action set out in the declaration.

3. PROMISE TO REPAIR—*right of servant to rely upon.*  A servant has the same right to rely upon a second promise to repair as he had a right to rely upon the first.

Action on the case for personal injuries.  Appeal from the Superior Court of Cook County; the Hon. WILLARD M. McEWEN, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1904.  Reversed and remanded.  Opinion filed December 22, 1905.

CHARLES A. CHURAN, for appellant.

CHARLES E. PAIN and FRANK M. COX, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment entered upon a directed verdict for the defendant at the close of plaintiff's evidence, in an action on the case for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant.  Appellee moved to strike the bill of exceptions from the record upon the ground that the bill was not presented to the trial judge or signed and sealed by him within the time limited by the order of the Superior Court and the motion was reserved to the hearing.

Where time is given for the filing of a bill of exceptions

and before the expiration of such time an order is made
extending the time for filing the bill, the time so given is
to be computed from the expiration of the time given by the
former order, and not from the date of the order.    Com-
puting the time given in this case by each order extending
the time for filing the bill, from the expiration of the time
given by the former order, the bill was signed and sealed in
proper time and the motion to strike the bill of exceptions
from the record will be denied.

The plaintiff was employed by the defendant to work upon
a buffing wheel in his shop.    This wheel was composed of
circular pieces of cloth placed side by side and pressed firmly
together so as to form a solid wheel by screws which passed
through metal plates placed on each side of the wheel.    The
cloth wheel was somewhat greater in diameter than the metal
plates and to "buff" or smoothen an article it was held
against the edge of the buffing wheel, which was driven by
a gas engine.

Plaintiff received the injuries complained of while en-
gaged in buffing upon said wheel a metal bracket.    He had
been in the service of the defendant three weeks at the time
he was injured.    He testified that soon after he began work
he noticed that the engine would stop or slow down and
then start up suddenly and thereby cause the buffing wheel
to start up suddenly with a jerk; that at the time he was
injured the wheel slowed down and then started up again
with a jerk and that thereby the bracket was thrown or
jerked out of his hand and one end of it struck his left eye
and so injured it as to destroy its sight.    He further testified
that the usual speed of the wheel was from 1,600 to 2,100
revolutions per minute; that the effect of holding an article
against the edge of the wheel when running at that speed
was to make the edge of the wheel firm and hard and that
if the speed was reduced the edges of the cloth would spread
and if the wheel was then suddenly started forward rapidly
it would jerk or force the article held against the edge of
the wheel out of the hand of the person who was holding it.

One count of the declaration alleges *inter alia* that a short

time before the accident the plaintiff noticed that the engine which drove the buffing wheel was in a dangerous and unsafe condition; that plaintiff then informed defendant of the unsafe and dangerous condition of the engine and defendant promised the plaintiff that the engine would immediately or in a reasonable time be placed in a suitable and safe condition, and directed the plaintiff to proceed with his work until such time as the engine could and would be repaired; that relying upon said promise plaintiff proceeded with said work and that while so engaged the sudden stopping and starting of the engine caused the buffing wheel to stop and suddenly start forward, thereby causing the bracket plaintiff was then polishing upon said wheel to be knocked out of his hand and produce the injury complained of; and that at the time of the accident a reasonable time had not elapsed in which the defects could have been remedied.

The plaintiff further testified that he was injured on Tuesday; that the Friday previous he said to the defendant: "What is the matter with the power, we don't get steady power;" that defendant replied, "I suppose the points are worn out in the engine. I suppose I have to put new ones in, but you go ahead and work and I will look into it and have it fixed," and that "so of course I worked." The evidence shows that the "spark" points in the cylinder of the engine were so adjusted to each other as to produce at certain periods in the movement of the piston, electric sparks which ignited the gas in the cylinder and caused an explosion of the gas and thus furnished the motive power of the engine.

Plaintiff further testified that on the Monday following said Friday the engine was, "kind of slack" and he said to the defendant, "We have the same power again as we had," and that defendant replied, "I was coming down Sunday and have it fixed but did not have time, come in the engine room and I will show you what is the matter with it;" that defendant then said it was the points, that they were worn out and greasy, that he would wipe the points and they would work for a while and he would get down and put in

new points; that defendant then took the points off, wiped them and put them back; that he agreed with plaintiff that the engine was not working right.

There is evidence tending to corroborate the testimony of the plaintiff as to the defective condition of the engine, the complaint by plaintiff to the defendant and the first promise of defendant to plaintiff to repair.

The rule of law as to an instruction at the close of the evidence for the plaintiff, to find the defendant not guilty in actions of this character is well settled. Such an instruction should not be given where the evidence for the plaintiff, with all the inferences that may properly be drawn therefrom, fairly tends to prove a cause of action set out in the declaration. Offut v. World's Columbian Ex'n, 175 Ill., 472.

We think the evidence fairly tends to prove that the engine in question was defective and out of repair; that by reason thereof the buffing wheel upon which plaintiff was employed by defendant to work was not reasonably safe; that this was made known to the defendant before the accident; that although he promised the plaintiff to repair the engine he failed to do so; that by reason of the defective condition of the engine the plaintiff was injured and that the evidence fairly tends to prove the charge of negligence of the defendant and injury to the plaintiff therefrom as set out in the declaration.

If the only promise to repair shown by the evidence was the promise made on Friday, four days before the accident, there would be much force in the contention of appellee that the plaintiff by continuing to work after the reasonable time within which repairs upon the engine could and ought to have been made, with knowledge of the defect which caused his injury, must be held to have assumed the risk of the defect.

In Gunning System v. La Pointe, 212 Ill., 274, it was held that where a defect could have been remedied in an hour and a half and the servant remained at work three days

after the promise of the master to repair the defect the servant must be held to have assumed the risk.

But in this case the evidence shows that the plaintiff again complained to defendant of the action of the engine on the Monday after the Friday on which the first promise was made; that defendant then told him that the trouble with the engine was that the points were worn out and greasy and that he took the points off, wiped them and said, "I will wipe those points now and they will be clean and work for a while and I will get down and will put in new points," and that he then told plaintiff to go to work. The fact that this promise was but a repetition of the promise made on the Friday before is immaterial. The plaintiff had the same right to rely upon the second promise to repair that he would have had, had it been the first promise made to him to repair, and could continue to work until the expiration of a reasonable time from the second promise within which the repairs would be made without assuming the risk.

There is in the record no direct evidence as to the time required to procure and put in new points or tips. The contention that plaintiff testified that defendant showed him new tips and that therefore it was the work of but a few minutes to repair the defects cannot be sustained. His testimony on that subject was given on cross examination and was as follows: "That (Monday) is the time Mr. Robinson told you it was the tips? A. Yes sir. Q. He agreed with you that the engine was not working right? A. Yes sir. Q. And he told you it was a matter easily fixed? A. Yes sir; the points. Q. All he had to do was to change the tips and put in new tips? A. Put in new tips. Yes sir. Q. Were those tips inside of the cylinder? A. I do not know what cylinder means. Q. He showed them to you? A. Mr. Robinson took them out and showed them to me. Q. He took them from the inside? A. Inside. Yes sir. Q. And he took the tips off? A. Yes sir." * * * "Q. Mr. Robinson took the old ones off and wiped them off and put them back again, that is, the old tips? A. Yes sir. Q. What did he say as to when he would put in new ones? A.

When he would get a chance to put in new ones. He was busy at that time." The tips shown the plaintiff were clearly according to his testimony the old tips and there is no evidence that the defendant had any new tips to put on at the time either promise was made. The accident occurred on the next day after the second promise to repair was made.

We think that upon the evidence the question whether the plaintiff continued to work after the reasonable time within which the repairs could and ought to have been made, as well as the question of the negligence of the defendant, should have been submitted to the jury and the judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*