## Samuel Cupples Woodenware Company v. Alexander Walins.

### Gen No. 13,805.

1. NEGLIGENCE—*what not violation of ordinance providing for protection of elevators.* *Held,* that actionable negligence was not established which consisted in the alleged violation of a certain municipal ordinance providing for the protection of elevators.

2. NEGLIGENCE—*must be brought home to the person charged therewith.* In order to hold a defendant responsible for any one taking hold of an elevator rope and moving the elevator while the plaintiff was using it, is essential to prove that this was done by some one for whose conduct the defendant was responsible.

3. MASTER AND SERVANT—*when latter not justified in continuing in employment relying upon promise of former.* A servant is not justified in continuing in his employment for a period of three weeks upon the faith of a promise which might have been performed in a single day.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. WILLIAM W. MAXWELL, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed April 20, 1908.

**Statement by the Court.** This is error to reverse a judgment recovered by Alexander Walins, plaintiff below, against the Samuel Cupples Woodenware Com-

pany, defendant below, for the sum of $425. The plaintiff claims to have been injured in an elevator in a building in the defendant's possession, by reason of defendant's negligence. The case was tried by the court, without a jury, and the court found for the plaintiff, assessed his damages at $425, and rendered judgment on the finding.

The following statement made by counsel for the defendant, plaintiff in error here, is admitted by counsel for plaintiff to be substantially correct:

"The Samuel Cupples Woodenware Company, at the time of the alleged accident to Walins, conducted a warehouse at Sixteenth and Canal streets in the city of Chicago. The building consists of five stories and a basement, all occupied and used by the defendant below for its business, except the third and a part of the first floors. The third floor was occupied by the American Window Glass Company, and a part of the first floor was occupied by the Automatic Electric Company.

There were three elevators in the building, two of which were used to carry freight which was being taken out of the building. The third elevator was used to convey the incoming freight, and was called the receiving elevator. This receiving elevator is the one on which Walins claims the accident happened. The receiving elevator was a freight elevator operated by ropes or cables. On two sides of the elevator were the plain brick walls and on the rear of the elevator was a heavy wire screening. There was a large iron door on either side of the well hole, and these doors when closed would wholly close the opening of the well hole. These doors were not automatic. In front of the opening of the well hole there was also a cross-bar. The testimony is that the building was made of entirely fire proof construction. The cross-beams and posts were made of wood, but were encased in cement. There were regular stairways in the building which were made of wood.

Neither the American Window Glass Company nor the Automatic Electric Company used any of the elevators in the building. The American Window Glass Company did not use them, because under an arrangement with the Samuel Cupples Woodenware Company the latter did all the handling of freight for the former. The Automatic Electric Company did not use them because the floor on which it was located was level with the ground and opened directly onto the street.

From the spring of 1902 until about August, 1906, Athanias Rice was the superintendent of the warehouse. At the time of this trial he was no longer in the employ of the defendant company. In July, 1906, he was succeeded by Edward License as superintendent. The plaintiff Walins was employed by Rice in the fall of 1902, and continued to work for the Samuel Cupples Woodenware Company until the happening of the accident. During the whole four years plaintiff worked for defendant he had charge of the receiving elevator as the operator thereof, and was engaged in the same occupation at the time of the accident. His duties as such operator were the following: All goods which came into the warehouse were loaded by the receiving clerk onto trucks similar to the one shown in the picture appearing on page 127 of the record in this case. It was the duty of plaintiff to wheel these trucks thus loaded onto the receiving elevator and carry the same to the various floors of the building, where the goods were unloaded and stored. Plaintiff was the only person who had any business with the elevator or any occasion to use the same. Rice told the plaintiff, when he put him in charge of the elevator, that he was to have sole charge of the same, and that no one else was to use it. It is conceded by plaintiff that during the whole four years Rice was there no one except the plaintiff ever used or attempted to use the receiving elevator.

Both Rice and License, prior to the accident, had

positively instructed every employe in the employ of the Samuel Cupples Woodenware Company not to use the receiving elevator under any circumstances, and both testify that no one except the plaintiff ever used the receiving elevator.

Plaintiff testifies that immediately License became superintendent other new employes of the company began using the receiving elevator, but cannot give the name of a single employe who used it. He further testifies that three weeks before the accident he complained to License about other men using the elevator, and told License he would quit his job unless that condition of affairs ceased. He also testifies that License told him at that time to go ahead, that no one else would use the elevator. Plaintiff further testifies that during the whole three weeks which elapsed from the alleged complaint to License to the time of the accident, everybody in the whole building kept right on using the receiving elevator. He further testifies that on October 13, 1906, at about fifteen minutes after three o'clock in the afternoon, he was pulling a loaded truck onto the elevator, with his back towards the elevator; that when the truck was about half way onto the elevator some one pulled the elevator rope, and the elevator dropped about three or four feet. He further testifies that the boxes on the truck were thereby thrown forward, and that his left hand was bumped by the boxes against the wire screening at the rear of the elevator. He further testified that his left wrist was badly sprained, and that he has been unable to work with the same since the accident. He testifies that as soon as the elevator started to go down he jumped and seized the rope.

No one was present except Walins, the plaintiff, when the accident happened, and there is no evidence as to who, if any one, started the elevator.

License denies that any one ever used the receiving elevator except plaintiff. He further positively denies ever having had the conversation in regard to others

using the elevator which plaintiff testified to, and positively denies that plaintiff at any time complained that others besides himself were using the receiving elevator.

He further testifies that the rule that no one but Walins was to use the receiving elevator for anything had been communicated by him to every employe, and had never been countermanded.

Rice and License testify that they specifically instructed plaintiff to push the trucks before him when he was putting them onto the elevator, and to pull the trucks after him when he was taking them off the elevator. Plaintiff admits that at the time of the accident he was pulling a truck onto the elevator.

Plaintiff in one place says that the accident happened on the fourth floor, and in another that it happened on the first floor. License testifies that plaintiff told him it happened on the second floor.

Plaintiff worked for about a day and a half after the accident, and was paid his wages by the defendant company to December 1, 1906, more than six weeks after the accident, when he was offered a position by Mr. License, but refused to accept the same on the alleged ground that he could not work.

Plaintiff was treated for the injury he received at the Eastern Emergency Hospital, at which he received his treatments free of charge, under a certain system of insurance. Dr. Curtis, who was called as a witness by the defendant, testified that he treated plaintiff for the injury, and that plaintiff came to consult him six or seven times, and that when he last examined him, about December 1, 1906, six weeks after the accident, he was, in his opinion, able to resume work, and that the injury left no permanent effects. Plaintiff testifies that he went to the hospital over twenty-eight times for treatment. There is no evidence that any one but Dr. Curtis treated him at the hospital.

Counsel for plaintiff read in evidence sections Nos.

670, 671 and 672 of the Revised Municipal Code of the city of Chicago, which contain certain provisions with reference to elevators in non-fire proof buildings.

Plaintiff was the only witness on his own behalf, except License, who was called by counsel for plaintiff merely to describe the construction of the building and the elevator. It was not contended by counsel for plaintiff that there were any defects in the equipment of the elevator or any unsoundness of appliances.

Counsel for plaintiff suggest that there should be added to the foregoing, that the plaintiff testified that, about three weeks before the accident he told Mr. License that everybody was around the elevator, and that he, plaintiff, had better quit the job, and that Mr. License said to him, "Never mind, nobody is going to touch it; don't know anything about it," and that the reason he complained to Mr. License was, that a good many times, when he had the load half in, somebody touched the rope and pulled it.

LACKNER, BUTZ & MILLER, for plaintiff in error.

HENRY F. RATHBONE, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

It is not conceded by plaintiff's counsel that the mere happening of the accident is *prima facie* evidence of negligence on the part of the defendant, and this cannot be successfully contended in the present case. Diamond Glue Co. v. Wietzychowski, 227 Ill. 338; Omaha Packing Co. v. Murray, 112 Ill. App. 233.

Plaintiff's counsel urge, as ground of recovery, that the defendant failed to comply with the requirements of sections 670, 671 and 672 of the Revised Municipal Code of the city of Chicago of 1905. Section 670 provides:

"It shall be lawful for elevators used exclusively as freight elevators to be without inclosing walls, but in

all such cases there shall be at every floor through which such freight elevators pass, automatic hatch closers, or automatic doors, made in such manner that they will fully close each well hole when the temperature in such well hole exceeds one hundred and forty degrees Fahrenheit,'' etc.　.

Section 671 provides:

''In all non-fire proof buildings all passenger elevators and all freight elevators, except such as are expressly excepted by this chapter, shall be inclosed in a wall of brick, tile, or such other incombustible material as may, from time to time, be approved by the Commissioner of Buildings as proper and suitable for the purpose,'' etc.

Section 672 applies only to elevator shafts ''required herein to be enclosed with fire proof walls,'' or, other words, to non-fire proof buildings. The intention and object of the sections is clearly, as we think, protection against fire. The shaft of the elevator in question had, at the time of the accident, walls on two sides, an iron gràting at the rear and an iron door in front, reaching from the floor to the top of the opening, which door, when shut, closed the entire opening. The door was not automatic. There were two sets of wooden stairways on each floor.

Edward S. License, the defendant's superintendent, testified that ''The building is made of entirely fireproof construction.'' This is uncontradicted. The want of an automatic door was not the proximate cause of the accident, nor did it contribute thereto in the least.

Section 670 provides for ''automatic hatch closers, or automatic doors, made in such manner that they will fully close each well hole, when the temperature in such well hole exceeds one hundred and forty degrees Fahrenheit,'' which could only be during a fire, and there is no evidence of a fire. It is manifest that if there had been an automatic door at the opening, and if it had closed at the time of the accident, the plaintiff could not have done his work, which was the mov-

ing of a loaded truck from the floor of the room through the opening and onto the elevator floor.

Plaintiff testifies that, October 13, 1906, about 3:15 o'clock in the afternoon, he was pulling a loaded truck onto the elevator, with his back to the elevator, and that when the truck was about half onto the elevator floor, some one, he does not know who, caught hold of the elevator rope and the elevator dropped three or four feet, and boxes on the truck were thereby thrown forward and bumped his left hand against the wire screening at the rear of the elevator, and injured him. It is urged by plaintiff's counsel that the defendant was negligent in not preventing persons from touching the rope. Plaintiff further testified that while Mr. Rice was superintendent, for four years, during which he, plaintiff, was in defendant's employ, he, plaintiff, had sole charge of the elevator, and no one used it but himself, except sometimes, when he would lay off; but after Mr. License became superintendent, everyone in the building used it, and that, about three weeks before the accident, he said to Mr. License that everybody was around the elevator, and that he had better quit the job, and Mr. License said, "Never mind; nobody is going to touch it; do not know anything about it." The evidence is, without contradiction, that the plaintiff had the sole charge of the elevator, and was the only person whose duty it was to use it, and while the plaintiff testified that everybody used it, he does not testify to the name of a single person who used it, or, if anyone used it except himself, for what purpose it was used.

Mr. License testified that the plaintiff's duties were to run the loaded trucks onto the elevator and take them to the floors where they belonged; that he was the only one who did that work, and that, to witness' knowledge, the plaintiff was the only person in defendant's employ who used the elevator; also that he, witness, had instructed every one of defendant's employes not to use the elevator. Mr. License also testi-

fied that the plaintiff never complained to him of others using the elevator, and that he had not the conversation with the plaintiff testified to by the plaintiff to have occurred before the accident.

In order to hold the defendant responsible for any one taking hold of the elevator rope and moving the elevator, while plaintiff was using it, it is essential to prove that this was done by some one for whose conduct the defendant was responsible. Defendant would not be liable for the act of a stranger, over whom it had no control. C. & N. W. Ry. Co. v. Scates, 90 Ill. 586, 594. It certainly cannot be inferred from the fact, if a fact, that some one pulled the elevator rope, that that some one was in defendant's employ or subject to its control. Plaintiff did not testify that he saw any one pull the rope, and his position was such—backing into the elevator and pulling the truck after him—that it was hardly possible for him to see any one pull it. He certainly could not see down the shaft below the elevator floor.

Assuming that plaintiff's testimony, which is contradicted by Mr. License is true, that, about three weeks before the accident, he told Mr. License that others were using the elevator, and Mr. License said, "Never mind; nobody is going to touch it," can this avail the plaintiff? Plaintiff testified: "As soon as Mr. License started to superintend, other men started to use the elevator, and they kept on using it right along until the time when I was injured." Here plaintiff tells us, in effect, that he knew every day, for about three weeks from the time of his alleged conversation with Mr. License, that the elevator was being used by others; yet he kept on with his work, requiring the use by him of the elevator for three whole weeks, without complaint or remonstrance. If Mr. License's alleged remark to plaintiff is to be construed as a promise to prevent the use of the elevator by others than the plaintiff, it is a promise which might have been fulfilled in a day, as to those over

whom he had control. Plaintiff, by continuing to use the elevator three weeks, with full knowledge, as he says, that during all that time it was also being used by others, cannot avail of the alleged conversation with Mr. License. Gunning System v. LaPointe, 212 Ill. 274. By continuing so long in the use of the elevator, without any change as to its use by others, he assumed the risk of using it. *Ib*. 280.

We are of opinion that the finding of the trial court is manifestly against the greater weight of the evidence, and the judgment will be reversed.

*Reversed.*