## Herman Horstman, Appellee, v. Staver Carriage Company, Appellant.

### Gen. No. 14,940.

1. STATUTE OF LIMITATIONS—*when new cause of action not set up.* In an action on the case for personal injuries if the original and amended declaration count upon the same negligence but the amended declaration adds a promise by the master to repair, a new cause of action is not set up.

2. VERDICTS—*when upon exercise of ordinary care not disturbed.* While it may be admitted that different minds might not agree as to whether the plaintiff was in the exercise of due care, if it cannot be said that the minds of reasonable men cannot agree that he was not in the exercise of such care at the time he was injured, the verdict of the jury will not be disturbed.

3. MASTER AND SERVANT—*when doctrine of assumed risk does not preclude recovery.* If the servant is ordered to do certain work and the machinery furnished by the master for the purpose of doing such work is defective or out of repair and the hazard assumed in obeying the order and doing the work was not so imminent that a person of ordinary prudence would not have incurred it, then the doctrine of assumed risk has no application.

4. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* While a belt in itself is simple and when not in action harmless, but when in use as an emery wheel, the motive force of which is steam, and out of repair and defective, it is dangerous to the operator; *held*, under the evidence in this case, that the doctrine of assumed risk as applied in what are known as the "simple tool" cases, did not obtain.

5. MASTER AND SERVANT—*when promise to repair may be relied on.* The law implies a promise to repair will be fulfilled within a reasonable time, during which time the servant has a right to rely on such a promise. In this case it appears there were two promises.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, pre-

siding.   Heard in this court at the October term, 1908.   Affirmed.
Opinion filed March 1, 1910.

BULKLEY, GRAY & MORE, for appellant.

JOHN W. ELLIS and JOHN A. BLOOMINGSTON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff sued defendant in an action on the case for personal injuries suffered while working for defendant. The relation of master and servant existed between the parties at the time of the accident. A trial before the Circuit Court with a jury resulted in favor of plaintiff and a judgment upon the jury's verdict against defendant for $7,500. We are asked to reverse this judgment upon the contentions that the trial court erred in sustaining the demurrer to the plea of the statute of limitations filed to the amended declaration; that plaintiff was not in the exercise of ordinary care at the time he was injured; that plaintiff assumed the risk; that the tool was simple, so that the promise to repair did not suspend the rule of assumed risk; that there was error in instructing the jury, and that the verdict is not supported by the proofs.

Defendant employed plaintiff as a machinist. He was a machinist of considerable experience and had worked for defendant several years. He worked as a "polisher and grinder," and at the time of breaking his arm was engaged in polishing a canopy top iron, which was forked shaped. The "polishing" was accomplished by placing the material to be polished in contact with the surface of a belt smeared with "emery" stretched over pulleys about five feet apart and caused to revolve over the pulleys, which furnished sufficient friction to polish whatever material was placed upon the emery side or top of the belt. Such arrangement is called an "emery wheel." The belt is formed by splicing the ends and fastening them

together with glue or cement. In the belt in question the lap over was about four inches. The lap ran against the pulley, the splice being underneath. The accident resulted from the end of the lap, which was loose, catching into the fork of the canopy iron which plaintiff was polishing, throwing his arm upwards and breaking it. Three or four days before the accident the attention of the foreman was called to the loose lap by plaintiff, who told him "that the belt had to be fixed, that he might get hurt." The foreman told him to go to the straw boss, whose duty it was to fix it. The belt was taken to the straw boss, but it was "emeried" the same night, without being fixed. On the morning of the accident the foreman said to plaintiff, "You have got to make five sets of canopy top irons right away," and he replied, "It is pretty hard to make them on them rotten belts," to which the foreman replied, "I will fix them up. They have got to be made and they have got to go on the job." This conversation occurred about seven in the morning, the injury happening at about eleven o'clock thereafter. There were several emery belts in use that morning, the one with the defective lap being used last. It was while working with the latter that the arm of plaintiff was broken. Ordinarily the breaking of an arm is not a very serious matter, but unfortunately for all concerned in this case, plaintiff's arm will not unite at the break notwithstanding skilled treatment has been applied in an effort to bring about a union of the severed parts. This misfortune renders the arm useless. The belt was safe to operate in the polishing of any implement which could be manipulated wholly on top of or above the belt, but the canopy iron, owing to its forked construction, could not be polished without the under prong of the iron being kept beneath the belt. The loose lap caught in the crotch of the fork-shaped canopy iron, causing the injury to plaintiff.

The original and amended declaration count upon

the same negligence to which the injury is attributable, but in the amended declaration there is added a promise by the master to repair. This is said to state a new cause of action, which is barred by the limitation statute. This precise point was decided contrary to such contention in Swift v. Madden, 165 Ill. 41, where it was averred in the original declaration that the injury resulted from the failure of the master to keep the machinery in repair, and that the unsafe condition was unknown to plaintiff; and in an amended count, after averring the same negligence as in the original declaration, interpolated the additional averment of notice of defect to the master and his promise to repair. This was held to be the restatement in a different form of the same actionable negligence. The court say: "From the reading of the first count of the declaration in connection with the first additional count, it is apparent that both state and rely upon the same wrongful act of the defendant—its negligence in failing to keep in repair machinery in its factory where the plaintiff was required by his employment to labor. We think it plain that the cause of action set out in the additional count was the same as set up in the original declaration." The court properly sustained plaintiff's demurrer to defendant's plea of the statute of limitations.

Whether plaintiff was in the exercise of due care for his own safety at the time he was injured was one of fact for the jury to decide. With their finding on this branch of the case we see no reason to disagree. It is not for us to interpose our judgment on this question of fact against that of the jury unless we can say that their finding is contrary to the manifest weight of the evidence. While it may be admitted that different minds might not agree that plaintiff was in the exercise of due care, it cannot be said that the minds of reasonable men would agree that he was not in the exercise of such care at the time he was injured. Nor can we say that the jury's determination

of that fact is against the manifest weight of the evidence.

To the contention that the doctrine of assumed risk is a bar to plaintiff's right to recover it is argued that the order of the master to do the work which was dangerous because of defective machinery, furnished to do such work, relieves the case from the operation of the doctrine of assumed risk. If plaintiff was ordered to do the work, as claimed, and the machinery furnished for the purpose of doing such work was defective or out of repair, and the hazard assumed in obeying the order and doing the work was not so imminent that a person of ordinary prudence would not have incurred the risk, then the doctrine of assumed risk has no application. Such questions are of fact to be determined by the jury from the proofs. In Offutt v. World's Columbian Exposition, 175 Ill. 472, the court in defining the doctrine as applicable to an "order case," said: "The rule is that where the servant is injured while obeying the orders of his master to perform work in a dangerous manner, the master is liable unless the danger is so imminent that a man of ordinary prudence would not incur it." And in Springfield v. Parks, 222 ibid. 355, it is said: "And the question whether the execution of the order of the foreman was attended with such danger that a man of ordinary prudence, having the knowledge of the situation which appellee had, would have incurred the danger by going upon the swing board, was one of fact for the jury.  *  *  *  Negligence and contributory negligence are questions of fact, and unless the facts are uncontroverted and all reasonable minds would readily agree as to the conclusion to be drawn from the admitted facts, those questions are questions to be submitted to the jury as questions of fact, and not to be decided as questions of law by the court." That the order given plaintiff was what is sometimes denominated a "rush order" clearly appears. The canopy irons were wanted as quickly as

they could possibly be polished by plaintiff and he was so informed. He remonstrated at first and called attention to the danger in doing the work with the defective belt, and was urged to continue and a promise made to repair. But counsel for appellant argue that plaintiff's complaint was that the belt was ''rotten'' and that it is clear that the belt was not rotten, but was defective in having a loose lap. This is true, but we will take notice of slang phrases which obtain in these times in all walks of life, and not do violence to apparent intention by indulging a literal interpretation of the words used, when such interpretation would do violence to the plain meaning intended by the use of words when taken in the connection in which they were used. In stigmatizing the belt as ''rotten'' plaintiff plainly intended to convey the idea that it was his opinion that the loose lap was a menace and danger to himself in the polishing of the canopy irons. There were several belts used by plaintiff the morning of the accident, the defective one causing the accident being used last when no other belts were available for use with sufficient emery on the surface to polish the irons. This fact in itself may have had great weight with the jury in demonstrating the due care of plaintiff. The defective belt being used only as a last resort and when all the other belts at his disposal had been rendered by use no longer available to do the work, was proof fairly tending to establish due care. This may have convinced the jury that plaintiff was a careful workman and had avoided danger as long as he could and had only incurred the danger at the last moment and when no other alternative was at hand, and in the belief that he could safely do his work as urged by the foreman, without incurring the risk of being injured. While a promise to repair was made several days prior to the accident, still such promise was on the day of the accident renewed, and although no time was fixed for fulfillment, the law implied that the promised repairs would be made within a reasonable time,

during which the workman had a right to rely on such promise. A continuance in the employment during such reasonable time is not negligence. Swift v. Madden, *supra*. We cannot see that Gunning v. LaPointe, 212 Ill. 274, is in conflict with the foregoing statement of the law, but rather, from the reasoning, may be regarded as supporting authority. In the Gunning case the workman continued his employment after the lapse of a reasonable time from the making of the promise to repair and "without exacting or receiving a further promise to repair." The saving element of a new promise, absent from the Gunning case, is present in the case at bar.

The contention that this case falls within the doctrine of the "simple tool" cases is without force. The belt in itself is indeed simple and, when not in action, harmless. But when in use as an emery wheel, the motive force of which is steam, and out of repair and defective, it is, as demonstrated in this case, dangerous to the operator. Furthermore the belt itself, though harmless it may be, yet, taking into consideration the uses to which such belt may be put, its operation may become highly dangerous. It was safe for use in polishing any sort of material wholly manipulated upon its surface, but dangerous for use in polishing apparatus of a forked nature, such as "canopy irons." The cases of Riley v. Am. Steel & Wire Co., 129 Ill. App. 123, International Packing Co. v. Kretowicz, 119 *ibid.* 488, Dauchy Iron Works v. Nevin, 130 Ill. 473, Bowen v. Chicago & Northwestern Ry. Co., 117 Ill. App. 9, Kistner v. Am. Steel Foundries Co., 233 Ill. 35, Webster v. Nisbett, 205 Ill. 273, and kindred cases, are inapplicable to the facts of this case. See footnote to Vanderpool v. Partridge, 13 L. R. A. (New Series) 668, for a full citation of authorities on this point. The instruction complained of has been upheld in its essential features in W. Chicago Street Ry. Co. v. Johnson, 180 Ill. 287. Were this otherwise, we cannot see that the added words, which

it is insisted constitute error, adversely affected the rights of defendant.

Being of the opinion that the record is free from reversible error, the judgment of the Circuit Court is affirmed.

*Affirmed.*