# John Mackin, Appellee, v. The Metropolitan West Side Elevated Railway Company, Appellant.

## Gen. No. 15,974.

MASTER AND SERVANT—*when doctrine of assumed risk applies.*    If the appliances employed by the servant are of simple and ordinary construction and the dangers incident to the employment are such as must have been known and appreciated by all reasonable men, the doctrine of assumed risk will apply.

Action in case for personal injuries.    Appeal from the Superior Court of Cook county; the HON. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1909.    Reversed.    Opinion filed February 5, 1912.

ADDISON L. GARDNER and WILLIAM R. MOSS, for appellant; W. W. GURLEY, of counsel.

QUIN O'BRIEN and LAWRENCE W. POTTER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

In a suit for personal injuries the appellee, hereinafter called plaintiff, secured judgment for three thousand dollars against the appellant, hereinafter called defendant.

The declaration in different counts alleged negligence of the defendant in that it did not furnish plaintiff with a reasonably safe place to work or reasonably safe appliances, did not furnish competent fellow laborers in sufficient number to safely do the work required, and gave a negligent order to plaintiff to work in such unsafe place, with such unsafe appliances, and without sufficient help to do the required work.

The plaintiff was employed by the defendant on the work at which he was injured as a common laborer. At the time he was injured he was with others loading a spool, or reel, of copper wire cable into a wagon. These spools, or reels, were like a common thread spool; the ends were four to five feet in diameter and the core between the ends about two feet long. The cable was wound around the core between the ends of the spool almost to the outer rim of the ends. These reels weighed from three thousand to four thousand pounds each and were kept in defendant's yard, from which they were taken by wagon to string the cable underneath the defendant's elevated structure. The wagon so used was an ordinary wagon with the end gate out. The reels were loaded into the wagon by a crew of men rolling them up two skids extending on an incline from the ground up into the rear end of the wagon. The skids were about fifteen feet long and each made of two planks, two by eight inches, laid together, so that each skid was four inches thick and eight inches wide. The skids, from one and a half to two feet apart, rested firmly upon cribbing built on the ground and made of wood four by four inches and about five feet long. On the day of the accident the plaintiff was one of the crew of eight or nine men rolling a reel of wire weighing about thirty-eight hundred pounds up the skids into the wagon. The reel was within an inch or two of the wagon when it began to roll back down the skids. The plaintiff was on the skids pushing on the reel when it got beyond control and started down, striking him, knocking his body between the skids and catching his head between the wire wound around the core of the reel and the cribbing, severely crushing his head, causing him to be confined in a hospital for four weeks, suffering much pain, spitting blood for four or five days, and having hemorrhages from the ears for about two

weeks, resulting in claimed permanent injury to his neck and deafness in the left ear.

The testimony showed that one of the men kept a cribbing timber pushed under and in the rear of the reel while rolling it up the skids, thereby blocking it and preventing it from rolling down, and that the cribbing block was not put in right or in some way it slipped and thereby they lost control, and being unable to hold it, the reel rolled back down the skids, causing the injury to plaintiff. There was testimony that in addition to the block used to hold the reel, ropes had also been used by passing them around the cable and around the front axle of the wagon, and as the reel was rolled up the incline a man would, by taking up the slack of the rope on the hitch around the axle, help hold the reel. The order of the foreman to the plaintiff and others in loading the reel was "to get places anywhere you could." There was practically no conflict in the testimony as to the foregoing facts. The testimony on the part of the plaintiff was that two reels before the one in question were loaded without the use of the ropes; that on the part of the defendant was that six to ten reels were so loaded without ropes, covering a period of several days. The superintendent and foreman, neither being in the employ of defendant at the time of the trial, testified on behalf of defend- and they had each told the plaintiff on different occasions he should not get behind the reel in loading, which the plaintiff denied.

There was no evidence of any defect in the appliances. They were of simple and ordinary construction. The ordinary dangers incident to the work and the place, in the manner of loading the reels as shown by the evidence, were open and obvious to any reasonably prudent man. The reel was not properly blocked, thereby causing it to roll back down the incline, a danger incident to the employment in the manner of loading the reels that must have been known

and appreciated by all reasonably prudent men. Gunning System v. LaPointe, 212 Ill. 274, and cases there cited; Montgomery Coal Co. v. Barringer, 218 Ill. 327-332.

Whatever may have been the manner of loading the reels at a time prior to the accident, the same was not material under the averments of the declaration and the evidence, which is undisputed, that the plaintiff continued at the work without objection. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492; Cichowicz v. International Packing Co., 206 Ill. 346. Nor is there any other evidence of a situation that takes the case from under the general rule of assumption of risk, unless it be held, as contended by plaintiff, that the plaintiff was injured in doing the work under an order of the defendant, thereby not assuming the risk.

The testimony on the part of the plaintiff pertaining to the order in loading the reel was, "to get places anywhere you can." In pursuance to that order the plaintiff claims he pushed on the reel until it was part way up the incline, when he voluntarily got upon the skids and continued pushing on the reel. Although the superintendent and the foreman both testified they had instructed him to keep from behind the reels, which instructions he denied, neither he nor any other witness testified to any order to take any particular position at the time of his injury or at any other time. The plaintiff testified that neither the superintendent nor the foreman told him where he should stand. The order "to get places anywhere you could" seems to have been a general order to all the men, given previously, while at work loading the reels. The order being general in the performance of the work (Linderman Box Co. v. Thompson, 127 Ill. App. 134), and there being no evidence of any defective appliances or that the place was unsafe, except as to the danger incident to the manner of doing the work apparent to all reasonably prudent men, or any evidence

that a sufficient number of competent laborers were not employed to safely do the work required, as charged in the declaration, plaintiff assumed the risk and there can be no recovery.

Other errors are assigned, but we do not consider it necessary in the view we take of the case to discuss them. The case is an unfortunate one and it would seem that in the zeal of the servant in the performance of his work he has suffered from an accident for which the law gives no redress.

The judgment is reversed with a finding of fact.

*Reversed.*