## Michael Murphy, Defendant in Error, v. Jones & Laughlin Limited, Plaintiff in Error.

### Gen. No. 16,361.

MASTER AND SERVANT—*when doctrine of assumed risk applies*. If the risk is apparent to the servant, and the danger is appreciated by him, and he proceeds, notwithstanding, the risk is deemed to have been assumed and will bar a recovery by him if injured.

Action in case for personal injuries. Error to the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed. Opinion filed March 12, 1912.

H. H. C. MILLER and W. S. OPPENHEIM, for plaintiff in error.

WING & WING and FRED W. BENTLEY, for defendant in error.

MR. JUSTICE CLARK delivered the opinion of the court.

In this case there was a recovery of $1,000 in favor of the defendant in error, hereinafter called the plaintiff, and against the plaintiff in error, hereinafter called the defendant, in a suit for damages for personal injuries received by the plaintiff while in the employ of the defendant in June, 1896. There was a trial before the court and a jury in October, 1909, the jury rendering a verdict in the sum mentioned, on which judgment was thereafter entered.

The declaration charges that the defendant had a derrick which it used in the conduct of its business, upon a part of which there were certain steps or cleats, forming a ladder; that it was the duty of plaintiff to ascend and descend the steps or cleats, and therefore the duty of defendant to use all reasonable care towards providing and maintaining them in a reasonable

and proper condition of repair; that the defendant, not regarding its duty, negligently and improperly permitted one of the steps or cleats to be removed, thereby rendering the ladder in an unsafe condition to be used in ascending and descending on that part of the derrick; that in the discharge of his duty the plaintiff was descending the ladder and that as a result and in consequence of the cleat or step being removed from the derrick, and while plaintiff was in the exercise of due and ordinary care, he fell from the derrick to the ground, sustaining the injuries complained of.

The plaintiff testified that he climbed up the ladder and came to where the cleat was missing and saw that it was not there; that he did not examine it, and never say any nails there; that he pulled himself over the place where the cleat was missing; that he then reached a padlock which he unlocked, and allowed the beam to swing out; that when he went down he knew the cleat was missing.

The only matter of dispute between the parties as to the accident seems to have turned upon the question as to the length of time that Murphy had been employed about the derrick prior to the accident, and the use that he had previously made of it. One of the witnesses for the plaintiff testified that he had seen Murphy work the derrick a good many times,—twenty or thirty times. There was testimony tending to show that the cleat had been off the derrick for some time before Murphy was injured. There is no proof that it was known to the officers of the defendant company. The plaintiff himself insisted that he did not know the cleat was missing until ascending the derrick on the day of the accident; that he had not worked upon the derrick for some time, and that when he last worked upon it the cleat was there. On the other hand, there were several witnesses called by the defendant who in substance testified that Murphy had been working about the derrick frequently during

several months prior to the accident. The superintendent of the defendant company testified that after the accident Murphy said to him: "Mr. Simpson, I knew the cleat was off well enough, but I went up the boom and I had the key in my hand, opened the padlock, let the bolt fall, put the key in my mouth; I had the key in my mouth, and I put my hand up to put it in my pocket, and when I came to the place where the cleat was out I fell." Other witnesses for the defendant testified that they were present when this conversation was had, and corroborated the superintendent in regard to it. The plaintiff however denied making the statement.

The plaintiff testified further, as to the manner in which the accident occurred, that some of the nails that had been used in tightening the step or cleat still remained in the beam, and that they caught him in the leg; that when his leg caught on the nails he lost his balance and fell. A motion was made to strike out this testimony on the ground of variance.

The contention of the plaintiff is that the proximate cause of the accident was that stated in the declaration, that is to say, the absence of a cleat or step; that the missing cleat was the cause of the exposed nails, and, being the first cause of the dangerous condition, was therefore the proximate cause. The cases of Pullman Palace Car Co. v. Laack, 143 Ill. 242, Houren v. C. M. & St. P. Ry. Co., 236 Ill. 620, and Seith v. Commonwealth Edison Co., 241 Ill. 252, are cited in support of this contention. In the case last mentioned Mr. Justice Cartwright, speaking for the court, uses the following language: "The negligent act or omission must be the cause which produces the injury, but it need not be the sole cause nor the last or nearest cause. It is sufficient if it occurs with some other cause, which, in combination with it, causes the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous se-

quence, unbroken by any new or independent cause."
In our opinion the testimony in the case before us was
not improperly admitted.

The remaining question to be determined is whether
or not the risk was one that was assumed by the
plaintiff. In our opinion it was. The fact that the
cleat was off was apparent to him as he ascended
the ladder. He could have refused to go to the top
of the ladder until this cleat was nailed on. In Gun-
ning System v. Lapointe, 212 Ill. 274, the rule is stated
thus: "While, as a broad, general proposition, the
master is required to furnish the servant a reasonably
safe place in which to work, it is also true that if the
defect is so open and obvious that the servant does
see and know of the existence of the defect, and the
danger arising therefrom is apparent and known to
him or within the observation of a reasonably prudent
man in his situation, and the servant enters upon and
continues the work, he is held to assume the risks and
hazards of the employment due to such conditions."

In the following cases recovery was denied, although
there was evidence tending to show that the master
had been informed of the defect and promised to
repair it: Illinois Steel Co. v. Mann, 170 Ill. 200;
Webster Mfg. Co. v. Nisbett, 205 Ill. 273; Kistner v.
American Steel Foundries, 233 Ill. 35; Meador v. L.
S. & M. S. Ry. Co., 138 Ind. 290.

In the present case it was not shown that the master
had knowledge of the defect or had promised to re-
pair it.

We think the motion at the close of all the testimony
should have been granted and the jury instructed to
find a verdict for the defendant. The judgment, for
the reasons stated, will be reversed.

*Reversed.*